Barbara HOUCHINS, Appellant–
Plaintiff,

v.

KITTLE'S HOME FURNISHINGS,
Appellee–Defendant.

No. 93A02–9108–EX–330.

Court of Appeals of Indiana,
Fifth District.

April 14, 1992.

Stephen B. Caplin, Caplin Pehler Park & Tousley, Indianapolis, for appellant-plaintiff.

Michael V. Gooch, Douglas A. Tresslar, Harrison & Moberly, Indianapolis, for appellee-defendant.

SHARPNACK, Judge.

Barbara Houchins appeals from a ruling of the Indiana Worker's Compensation Board ("board") suspending her compensation based upon her refusal of medical services. We affirm.

Houchins raises four issues for review which we consolidate and restate as:

1. Whether, under the worker's compensation statute, Kittle's, Houchins' employer, could unilaterally suspend temporary total disability ("TTD") payments based upon Houchins refusal to undergo treatment recommended by the doctor provided by Kittle's.

2. Whether Kittle's provided Houchins with proper notice of the consequences of her refusal of services.

The parties submitted their dispute to the board upon agreed facts. On December 17, 1988, Houchins injured her back in an accident arising out of the course of her employment with Kittle's. Houchins executed an agreement with Commercial Union ("Commercial"), Kittle's insurer, providing her with weekly benefits for her TTD. The parties subsequently modified the agreement due to an erroneous calculation of her weekly wage. The board entered an award on the modified agreement.

Commercial requested that Houchins submit to an examination to determine if she was a candidate for participation in a pain management program at Community Hospital, and Houchins complied. Following the examination, Dr. Kravitz, the examining physician, recommended that Houchins be admitted to Community Hospital. On June 6, 1990, Commercial notified Dr. Kravitz of its decision to accept his recommendation that Houchins be enrolled in the pain management program and also wrote Houchins' attorney informing him of Commercial's decision. The latter correspondence stated that "if Mrs. Houchins is not enrolled at the earliest opportunity, [Commercial] will consider this a refusal to seek medical attention and all compensation will be ended." (Record, 30.)

On June 18, Houchins' attorney wrote Commercial informing Commercial that Houchins was willing to commence the inpatient pain management program at Community Hospital. Houchins scheduled an appointment for evaluation with regard to her participation in the pain management program. Houchins kept the August 27 appointment, following which Dr. Manders, the examining physician, concluded that she was a reasonable candidate for the treatment from a medical standpoint. Houchins refused treatment at Community Hospital even though the program had a bed available on September 22. Commercial informed Houchins' attorney by letter that, due to Houchins' refusal, Commercial had the right to cease paying compensation. Houchins again declined admission to Community on September 29.

Houchins responded on October 5, 1990, by filing an application for adjustment of claim. In addition, on October 24, 1990, Houchins requested a "five day order." The parties agreed to submit the cause to the board on the following issues of law: whether Kittle's could unilaterally terminate compensation payments based upon Houchins' refusal to enroll in the pain management program, and, if so, whether Kittle's had provided Houchins with notice as required by the statute. The parties submitted briefs in support of their positions and attached exhibits to those briefs. Neither party presented any testimony or other evidence. On February 11, 1991, a single hearing member of the board denied Houchins' request for a five-day order and issued an order suspending her rights and benefits until she accepted the offered services and supplies. On July 31, 1991, the full board adopted the decision of the single hearing member.

On appeal, we are bound by the factual determinations of the Workers' Compensation Board. Ind.Code § 22–3–4–8 (1991). We will not disturb the board's findings unless the evidence is undisputed and leads inescapably to a contrary result.

*Sears Roebuck & Co. v. Murphy* (1987), Ind.App., 508 N.E.2d 825, 829, *reh'g denied, Sears Roebuck & Co. v. Murphy* (1987), Ind.App., 511 N.E.2d 515, *reh'g denied.* In reviewing the findings of the board, we may not disregard any reasonable inferences drawn by the board from the facts that the evidence tends to prove. Furthermore, we are required to disregard all evidence which is unfavorable to the board's findings and consider only those facts and reasonable inferences which support such findings. *Id.* However, the standard for review of agency conclusions of law is different. This court is not bound by the agency's interpretations of law. *Public Employees Retirement Fund v. Miller* (1988), Ind., 519 N.E.2d 732, 733. When an agency interprets its own statute, the reviewing court should afford the agency's interpretation great weight, but the court is not bound by the agency's interpretation and should reverse if the agency incorrectly interpreted the statute. *Department of Environmental Management v. AMAX, Inc.* (1988), Ind.App., 529 N.E.2d 1209, 1214.

Houchins concedes that an employer may suspend permanent partial impairment ("PPI") compensation payments based upon an unreasonable refusal of medical services. I.C. § 22–3–3–4(c); *Pipkin v. Continental Steel Corp.* (1938), 105 Ind. App. 669, 671, 16 N.E.2d 984, 986. Houchins also concedes that an employer may do so unilaterally upon providing proper notice. However, Houchins contends that an employer's right to suspend payments is limited by I.C. § 22–3–3–4(c) to compensation for PPI and does not extend to TTD payments.

■ Houchins relies upon the structure of I.C. § 22–3–3–4 which, at the time of the hearing in this case, provided:

(a) *After an injury and prior to an adjudication of permanent impairment,* the employer shall furnish or cause to be furnished, free of charge to the employee, an attending physician for the treatment of his injuries, and in addition thereto such surgical, hospital and nursing services and supplies as the attending physician or the worker's compensation board may deem necessary. . . .

(b) *During the period of [TTD] resulting from the injury,* the employer shall furnish the physician services, and supplies, and the worker's compensation board may, on proper application of either party, require that treatment by the physician and services and supplies be furnished by or on behalf of the employer as the worker's compensation board may deem reasonably necessary.

(c) *After an employee's injury has been adjudicated* by agreement or award *on the basis of [PPI] and within the statutory period for review of such cases,* . . . the employer may continue to furnish a physician or surgeon and other medical services and supplies, and the worker's compensation board may within the statutory period for review as provided in section 27 of this chapter, on a proper application of either party, require that treatment by that physician and other medical services and supplies be furnished by and on behalf of the employer as the worker's compensation board may deem necessary to limit or reduce the amount of the employee's impairment. *The refusal of the employee to accept such services and supplies, when provided by or on behalf of the employer, shall bar the employee from all compensation otherwise payable during the period of the refusal, and his right to prosecute any proceeding under IC 22–3–2 through 22–3–6 shall be suspended . . . until the employee's refusal ceases. The employee must be served with a notice setting forth the consequences of the refusal under this section. The notice must be in a form prescribed by the worker's compensation board. No compensation for permanent total impairment, [PPI], permanent disfigurement, or death shall be paid or payable for that part or portion of the impairment, disfigurement, or death which is the result of the failure of the employee to accept the treatment, services, and supplies required under this section.* (Emphasis added.)

According to Houchins, if the legislature had intended to allow unilateral termination of TTD benefits, it would have in-

cluded under subsection (b) language similar to the refusal provision of subsection (c). We disagree.

The relevant language clearly refers to medical services provided by or on behalf of the employer without regard to which subsection directs or authorizes those services. Subsections (a), (b) and the first part of (c) set forth the employer's duty (in (a) and (b)) and right (in (c)) to provide medical services at different stages in the worker's compensation process but those subsections do not purport to cover different services. With regard to the refusal provision, no attempt is made to reference the "services" according to the differing conditions under which they could be supplied; rather, the statute speaks simply to the refusal of "such services." In addition, the last portion of the refusal provision states that no compensation shall be payable for "permanent total impairment, PPI, [etc.] ... which is the result of the failure of the employee to accept the ... services ... required under this *section*." (Emphasis added.) That language follows the language providing for suspension of compensation during the period of refusal, and, together with it, constitutes one provision setting forth all of the consequences of refusal of services. Because the latter portion explicitly applies to all of I.C. § 22–3–3–4 and not exclusively to subsection (c), we should read the whole provision in the same light.

Likewise, we disagree with Houchins' contention that, even if TTD payments may be suspended upon a refusal of services, suspension can only occur after the board has determined that the refusal was unreasonable. Houchins concedes that, upon giving proper notice, an employer may unilaterally suspend payments in response to the unreasonable refusal of services by an employee receiving PPI payments. The clause creating the substantive right to suspend payments immediately precedes the notice provision under I.C. § 22–3–3–4(c). As explained above, all of the language regarding the consequences of a refusal of services should be read as one provision. The notice must relate the "consequences of the refusal under this *section*." (Emphasis added.) Therefore, we must apply both the procedure by which an employer may suspend payments as well as the employer's substantive right to do so to a refusal of services offered under subsection (b). Nothing in the grammar or structure of the section indicates that the substantive bar on compensation during periods of refusal applies at all stages but that the notice provision applies only to employees who have received PPI awards.

In sum, the language in subsection (c) concerning the consequences of refusal to accept services and the requirement for notice of those consequences refers to all services offered under section 22–3–3–4 without regard to whether they are offered under (a), (b), or (c). The language of the refusal provision is such that, had it been set forth under a separate subsection, its application to all services offered would be beyond question. The mere circumstance of its location within subsection (c) is not sufficient to counter the otherwise clear meaning of the language.

■ Such an interpretation is necessary to effectuate the legislative intent underlying the statute. Our foremost obligation in construing a statute is to determine and apply the intent of the legislature. *Thompson v. Thompson* (1972), 259 Ind. 266, 273, 286 N.E.2d 657, 661. The apparent statutory purpose of suspending compensation rights upon unreasonable refusal of treatment by an employee who has quiesced to a state of PPI is that an employee should not be allowed to refuse treatment that might lessen the degree of impairment. It is only logical that an employee who is under TTD should likewise not be able to unreasonably refuse offered treatment that might end her disability. Successful treatment would hasten a return to the work force and facilitate the worker's compensation process by stabilizing the employee in order that a permanent disposition may be made.

Houchins next claims that, even if Kittle's could unilaterally suspend compensation payments under I.C. § 22–3–3–4(c), it failed to provide her with the notice required by the statute. As related above, subsection (c) provides that an employee's refusal of services bars the employee from

compensation. That section also provides, "The employee must be served with a notice setting forth the consequences of the refusal under this section. The notice must be in a form prescribed by the worker's compensation board." Houchins claims that she did not receive notice in a form prescribed by the board prior to termination of her compensation.

Kittle's claims it provided Houchins with notice that it intended to stop compensation payments if Houchins did not enroll in the pain management program at the earliest opportunity. Kittle's points to a letter dated June 6, 1990, from Commercial to Houchins' attorney stating that Commercial would consider Houchins' refusal to enroll in the pain management program at the earliest opportunity a refusal of services and end all compensation. Kittle's contends that, although it did not send Houchins notice on a form approved by the board, it gave her even more information regarding the consequences of a refusal than required by the notice provision in the statute. Therefore, according to Kittle's, Houchins has not demonstrated prejudice.

The question of whether Houchins received proper notice under the statute is, in part, a factual question because the answer hinges upon whether Kittle's communicated the consequences of a refusal *prior* to suspending payments. On appeal, Houchins claims that the only notice she received was a letter dated September 27, after she had refused to enroll in the pain management program. Prior to the hearing, the parties agreed that there was no issue of fact, and that the issues before the board were purely questions of law. While neither party presented testimony, they both submitted exhibits in support of their briefs. The single hearing member noted that the parties had not agreed as to the admissibility of the exhibits, however he reasoned that the parties had a clear understanding that the board was to issue a ruling in the case, and, therefore, that the parties intended to have the board consider the exhibits as evidence. In addition, the hearing member found:

"[T]hat Petitioner takes issue with the form of the notice of termination. It seems clear, however, that Petitioner was represented by among the most competent counsel in the State of Indiana and, as such, it is only reasonable that Defendant communicated effectively the consequences of the refusal."

(Record, 9.) Implicit in the above quoted language is a finding by the hearing member that Commercial mailed the June 6 letter and the presumption that Houchins' attorney received the letter. Houchins did not contest those exhibits at the hearing,[1] and she does not specifically contest the finding on appeal. Houchins cannot create a factual issue on appeal that she did not contest below.

◼ We must therefore decide whether the June 6 letter satisfied the notice requirement of I.C. 22-3-3-4(c). While Kittle's acknowledges that it did not utilize the form provided by the board, it maintains that its correspondence supplied Houchins with at least as much information as is required by the statute. We agree.

◼ We will find substantial compliance with a statutory notice provision where a party receives notice which achieves the purpose for which the statute was intended. *Galbreath v. City of Indianapolis* (1970) 253 Ind. 472, 478, 255 N.E.2d 225, 229–230; *Salem Community School Corp. v. Richman* (1980), Ind.App., 406 N.E.2d 269, 272. Here, the notice sent to Houchins' attorney substantially complied with state form 42606 (5–88) entitled "Notice to employee/dependant of suspension of benefits." The top of the form contains the following sentence: "Notice is hereby given, pursuant to the Worker's Compensation and Occupational Disease Acts of Indiana of the consequences of your refusal described below[.]" Three boxes appear below with descriptions of things refused and instructions to check the appropriate box. The paragraph connected to the first box reads, "Refusal to accept medical treat-

---

1. In her brief supporting her request for a five-day letter, Houchins claimed both that she did not receive notice "on forms prescribed by the board" (Record, 85) and that "the only notice of termination came on September 27, 1990." (Record, 83.) Houchins did not refer to the June 6 letter in her reply brief.

ment, services and supplies, or attend medical examination provided by or on behalf of your employer, shall bar your compensation otherwise payable during the period of refusal (IC 22–3–3–4) (IC 22–2–3–6)[.]" The June 6 letter included all of the essential information contained in State form 42606 (5–88). Clearly, the June 6 letter provided information satisfying the primary purpose of the notice provision: to advise the employee of the consequences of her refusal.

In addition, the fact that the letter was addressed to Houchins' attorney instead of Houchins is not significant. As our supreme court has long held, "Ordinarily, the knowledge of an attorney gained while acting for a client and within the scope of his employment is deemed to be the knowledge of the client to whom it is presumed to have been imparted." *Wise v. Curdes* (1942), 219 Ind. 606, 613, 40 N.E.2d 122, 125.

For the reasons herein contained, we affirm the order of the Indiana Worker's Compensation Board.

AFFIRMED

RUCKER, J., concurs.

BARTEAU, J., concurs in result.