In the Matter of PATERNITY OF BABY GIRL, BORN 6–7–94.

P.D., Appellant–Petitioner,

v.

D.H., Appellee–Respondent,

and

In the Matter of the ADOPTION OF E. (The H. Infant), a minor, S. and K.P., Appellees–Petitioners.

No. 71A03–9510–JV–359.

Court of Appeals of Indiana.

Feb. 21, 1996.

Debra Voltz–Miller, South Bend, Jennifer L. Romeo, Mishawaka, for Appellant.

W. Russell Sanford, Plodowski & Sanford, South Bend, Eileen Doran, Notre Dame Legal Aid Clinic, South Bend, for Appellee.

## OPINION

STATON, Judge.

P.D. appeals from the trial court's denial of his motion to contest adoption and petition to establish paternity and the trial court's grant of S.P. and K.P.'s petition for adoption. P.D. presents three issues for appellate review; however, we address this dispositive (restated) issue only: whether the trial court erred in concluding that P.D. had proper notice of the adoption proceedings pursuant to IND.CODE § 31–3–1–6.4 (1993).

We reverse.

The pertinent facts reveal that in 1993, D.H. and P.D. were involved in a relationship during which time D.H. learned that she was pregnant; however, D.H. was unsure of the baby's father. At some point thereafter, D.H. ended the relationship with P.D. In January 1994, D.H. decided to place her unborn child up for adoption and contacted an attorney.

In March 1994, D.H. met with S.P. and K.P. (collectively "Parents") and preliminary arrangements were made for Parents to adopt D.H.'s unborn child. On March 15, 1994, the attorney arranging the adoption sent a letter to P.D. which indicated that he could be the father of D.H.'s unborn child

and that D.H. intended to put the child up for adoption. Attached to the letter was a consent form and a copy of IND.CODE § 31-3-1-6.1 (1993). P.D. acknowledged receipt of this letter and the attachments but thought that he had until thirty days after the child's birth to contest the adoption.

D.H. gave birth to a baby girl on June 7, 1994. On June 9, 1994, the trial court entered an order approving placement and temporary custody of the child to Parents pending adoption. On July 27, 1994, P.D. filed a petition to establish paternity and blood tests were ordered by the trial court on October 4, 1994. Blood tests showed that P.D. was the child's father.[1] On September 21, 1994, Parents filed a petition for adoption and on September 28, 1994, counsel sent notice to P.D. of the pending adoption in accordance with IND.CODE § 31-3-1-6.1. Thereafter, on October 7, 1994, P.D. filed a motion to contest adoption.

The trial court consolidated the paternity and adoption matters and in March 1995, P.D. filed a motion for summary judgment, seeking the establishment of his paternity, dismissal of the adoption, and custody of his child. In May 1995, D.H. filed a motion for summary judgment, alleging that P.D. was barred from both establishing paternity and contesting the adoption based upon his failure to contest the adoption pursuant to IND. CODE § 31-3-1-6.4.

An evidentiary hearing was held on June 29, 1995. At the outset, the trial court denied the pending motions for summary judgment and proceeded to hear evidence on both the petition for adoption and the motion to contest. Thereafter, the trial court denied P.D.'s motion to contest adoption and granted Parents' petition for adoption. An order for adoption was entered on June 30, 1995. The court entered findings of fact and conclusions of law on July 26, 1995, concluding that:

1. [P.D.] received notice of the prospective adoption on March 15, 1994.

2. By failing to respond to the notice within 30 days, [P.D.'s] consent is irrevoca-

bly implied, and he is barred from contesting the adoption or establishing his paternity.

3. By failing to contest the adoption, file a paternity action or register with the putative father registry within 30 days of the birth of [ ], [P.D.'s] consent is irrevocably implied, and he is barred from contesting the adoption or establishing his paternity.

4. [D.H.] consented to the adoption by [Parents].

5. It is in the best interest of [ ] that the motion to contest adoption be denied, that the petition to establish paternity be denied and that the petition for adoption be granted.

\*       \*       \*       \*       \*       \*

Record, p. 235. P.D. now appeals this judgment.

■■■ Prior to the hearing, P.D. requested specific findings of fact and conclusions of law pursuant to Ind.Trial Rule 52(A). When a party has requested specific findings of fact and conclusions thereon pursuant to T.R. 52(A), the reviewing court cannot affirm the judgment on any legal basis; rather, this court must determine whether the trial court's findings are sufficient to support the judgment. *Lever Brothers Co. v. Langdoc,* 655 N.E.2d 577, 580 (Ind.Ct.App.1995). In reviewing the judgment, we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. *Id.*

■■■ The judgment will be reversed only when clearly erroneous, i.e., when the judgment is unsupported by the findings of fact and conclusions entered on the findings. *De-Haan v. DeHaan,* 572 N.E.2d 1315, 1320 (Ind.Ct.App.1991), *trans. denied.* Findings of fact are clearly erroneous when the record lacks any facts or reasonable inferences to support them. *Matter of Estate of Banko,* 622 N.E.2d 476, 481 (Ind.1993), *reh. denied.* When determining whether the findings are clearly erroneous, we consider only the evidence most favorable to the judgment and

---

1. After P.D.'s paternity was established, P.D. has had continuous alternate weekend visitation with the child.

the reasonable inferences flowing from that evidence. *Id.* We will not judge witness credibility or reweigh the evidence. *Id.*

P.D. contends that the trial court erred in finding that he received sufficient notice of the adoption pursuant to IND.CODE § 31–3–1–6.4 (1993).[2]

Initially, we note that adoption statutes are in derogation of the common law and therefore must be strictly construed. *Mullis v. Kinder*, 568 N.E.2d 1087, 1089 (Ind.Ct.App.1991). In order to defeat a natural parent's right of custody, persons seeking to adopt have the burden of demonstrating strict compliance with all particular essentials of the adoption statutes. *Petition of Gray*, 425 N.E.2d 728, 730 (Ind.Ct.App. 1981), *trans. denied.* They must prove that the living parents of the child have so violated their natural and legal obligations to the child that they come within the statute authorizing waiver of consent of the natural parents. *Id.* (quotation omitted).

P.D. argues that the trial court erred in denying his motion to contest adoption because he did not have sufficient pre-birth notice of the adoption under IC 31–3–1–6.4. The statute set forth the requirements necessary to give a putative father pre-birth notice of a pending adoption and provided, in pertinent part:

\* \* \* \* \* \*

(b) Before the birth of a child, ... an attorney representing prospective adoptive parents of the child may notify the putative father of the child that the mother of the child is considering an adoptive placement for the child.

\* \* \* \* \* \*

(d) The putative father's consent to adoption of the child is irrevocably implied without further court action if the father:

(1) fails to file a paternity action under IC 31–6–6.1 not more than thirty (30) days after receiving actual notice of the mother's intent to proceed with an adoptive placement of the child, regardless of whether the child is born before or after the expiration of the thirty (30) day period or;

(2) files a paternity action under IC 31–6–6.1 during the thirty (30) day period prescribed by subdivision (1), and fails to establish paternity in the paternity proceeding.

IC 31–3–1–6.4(f) further provided that notice of the adoption under this section must substantially comply with the form provided.[3] When the putative father's consent is irrevocably implied, he cannot contest the adoption or the validity of the implied consent or establish paternity of the child. IC 31–3–1–6.4(g) and (h).

Our review of the record reveals that on March 15, 1994, counsel for Parents sent P.D. a letter which stated that he represented the proposed adoptive parents of a child to be born to D.H. and that D.H. informed him that he "may be the father of the child but she cannot say that with certainty." Record, p. 103. The letter further stated that the law requires the proposed adopting parents give notice to the alleged father and

2. This statute has been amended. *See* IND. CODE § 31–3–1–6.4 (Supp.1995) and 1995 Ind. Acts P.L. 267, Sec. 2.

3. IC 31–3–1–6.4(f) read:
   Notice of the adoption under this section must be provided to the putative father in substantially the following form:
   "_____ (putative father's name), who has been named as the father of the unborn child of _____ (birth mother's name), or who claims to be the father of the unborn child, is notified that _____ (birth mother's name) has expressed an intention to secure an adoptive placement for the child.
   If _____ (putative father's name) wishes to contest the adoption of the unborn child, the

putative father must file a paternity action to establish his paternity in relation to the unborn child not later than thirty (30) days after receipt of this notice.
   If _____ (putative father's name) does not file a paternity action not more than thirty (30) days after receiving this notice, or having filed a paternity action is unable to establish paternity in relation to the child, the putative father's consent to the adoption shall be irrevocably implied and the putative father loses the right to contest both the adoption and the validity of his implied consent to the adoption. In addition, the putative father loses the right to establish paternity of the child under IC 31–6–6.1."

that the alleged father can waive prior to the birth of the child any additional or subsequent notice. *Id.* Along with the letter was a consent form and a copy of IND.CODE § 31–3–1–6.1 (1993),[4] the notice and consent statute applicable following the birth of the child.

P.D. argues that the trial court erred in concluding this constituted sufficient notice. D.H. and Parents counter that the notice was substantially similar to that set forth in the statute and thus, his consent was irrevocably implied by his inaction. Accordingly, our inquiry rests with this issue of first impression: whether the contents of the letter, the consent form, and a copy of IC 31–3–1–6.1 constitute sufficient notice under IC 31–3–1–6.4.

■ Clearly, P.D. did not receive the notice in the prescribed form set forth in the statute. *See,* n. 3, *supra.* Nevertheless, substantial compliance with a statutory notice provision will be sufficient if the party receives notice which achieves that purpose for which the statute was intended. *Houchins v. Kittle's Home Furnishings,* 589 N.E.2d 1190, 1194 (Ind.Ct.App.1992); *Salem Community School Corp. v. Richman,* 406 N.E.2d 269, 272 (Ind.Ct.App.1980), *reh. denied, trans. denied.* In determining legislative intent, we presume that the legislature intended that statutory language be applied in a logical manner consistent with the statute's underlying policy and goals. *Detterline v. Bonaventura,* 465 N.E.2d 215, 218 (Ind.Ct.App.1984), *reh. denied.*

Enacted in 1993, IC 31–3–1–6.4 now allows a putative father to consent to an adoption before the birth of the child. The underlying purpose of this provision is to facilitate the adoption process as it is a vehicle for prospective adoptive parents to obtain consent of the putative father before the birth of the child. Essentially, this provision gives the adoptive parents the opportunity to a prebirth start to the adoptive process and enables these parents to have the adoption finalized as close to the birth of the child as possible.

This provision is consistent with the entire adoption procedure which derives from the state's interest in protecting and promoting the welfare of children by expediting their entry into a suitable, stable family unit. The process seeks to avoid any subsequent disruptive interference by the natural parent whose rights have been extinguished, and who may pose a threat to the parent-child relationship created by the adoption. Thus, based upon this public policy, an adoption statute should not be so strictly construed as to defeat its purposes. *Matter of Adoption of Thomas,* 431 N.E.2d 506, 512 (Ind.Ct.App. 1982), *reh. denied, trans. denied.*

■ Yet, the right to raise one's child is an essential and basic right more precious than property rights and is within the protection of the Fourteenth Amendment to the United States Constitution. *Matter of Adoption of Topel,* 571 N.E.2d 1295, 1298 (Ind.Ct. App.1991). Our statutes governing adoption should not be so liberally construed that safeguards erected for the preservation of family relationships are destroyed. *Id.* A decree of adoption severs forever every part of the parent-child relationship and the child is severed from its own family tree and engrafted upon another. *Id. See also In re Bryant's Adoption,* 134 Ind.App. 480, 189 N.E.2d 593, 597 (1963). Therefore, we must consider these competing interests when analyzing the facts before us.

■ Here, the purported notice is the letter, consent form, and a copy of IC 31–3–1–6.1 which read, in pertinent part:

(a) In cases where the putative father of a child born out of wedlock has failed or refused to consent to the adoption of the child or has not had the parent-child relationship terminated under IC 31–6–5, the putative father shall be given notice of the adoption proceedings.

\* \* \* \* \* \*

(g) A putative father's consent to the adoption is irrevocably implied without further court action if he:

(1) fails to file a motion to contest the adoption in accordance with section 6.3 of

---

4. This statute has been amended. *See* IND. ·CODE § 31–3–1–6.1 (Supp.1994).

this chapter or fails to file a paternity action under IC 31–6–6.1 within thirty (30) days after service;

\* \* \* \* \* \*

Based upon the copy of the statute and letter he received, P.D. was informed that he may be the unborn child's father, and as the putative father of *a child born out of wedlock*, he had thirty days to contest the adoption or his consent will be irrevocably implied, and he will lose his right to establish his paternity under IC 31–6–6.1. At the hearing, P.D. testified that after he received the March 15, 1994 letter, he thought he had to take action thirty days after the birth of the child. By sending a copy of IC 31–3–1–6.1, the statute applicable after a child out of wedlock *is born*, P.D. was not informed of the action necessary to contest the adoption in accordance with IC 31–3–1–6.4, the *pre-birth* notice statute. In fact, by sending a copy of IC 31–3–1–6.1, P.D. was affirmatively misled as to what was required of him.

As indicated *supra*, adoption statutes are in derogation of the common law and must be strictly construed. *Petition of Gray, supra.* In light of this standard, we conclude that the copy of IC 31–3–1–6.1, an inapplicable statute, the consent form, and the letter which indicated that P.D. "may" be the father of D.H.'s unborn child, cannot be considered substantial compliance with the pre-birth notice as set forth in IC 31–3–1–6.4. Therefore, we determine that the trial court erred in concluding that the March 15, 1994 materials gave P.D. sufficient pre-birth notice of the adoption proceedings and that by failing to respond within thirty days, his consent was irrevocably implied.

■ The trial court also concluded:

By failing to contest the adoption, file a paternity action or register with the putative father registry *within thirty days of the birth of* [ ], [P.D.'s] consent is irrevocably implied, and he is barred from contesting the adoption or establishing his paternity.

Record, p. 235 (emphasis added). Neither the current version of IC 31–3–1–6.1 nor the prior version, *see* IC 31–3–1–6.1 (1993), required compliance within thirty days of the birth of the child. Instead, this statute requires compliance within thirty days after the date of service of notice of the petition for adoption. Thus, the trial court's conclusion No. 3 is also erroneous.

Because the judgment is based upon erroneous conclusions of law, we reverse the trial court's determination denying P.D.'s motion to contest the adoption, his petition to establish paternity and the grant of Parents' petition for adoption.

Reversed.

HOFFMAN and KIRSCH, JJ., concur.