Ron WOEHNKER, Appellant–Plaintiff,

v.

COOPER TIRE & RUBBER COMPANY, Appellee–Defendant.

No. 93A02–0110–EX–691.

Court of Appeals of Indiana.

March 5, 2002.

Randall J. Zromkoski, Bradley L. Banks, Blachly, Tabor, Bozik & Hartman, Valparaiso, IN, Attorneys for Appellant.

Kathleen M. Anderson, Dawn R. Rosemond, Barnes & Thornburg, Fort Wayne, IN, Attorneys for Appellee.

## OPINION

BROOK, Chief Judge.

### Case Summary

Appellant-plaintiff Ron Woehnker ("Woehnker") appeals the decision of the

Indiana Worker's Compensation Board ("the Board") denying his request for an independent medical examination ("IME"). We reverse.

### Issue

Woehnker raises a single issue for review, which we restate as whether the Board erroneously denied his request for an IME.

### Facts and Procedural History

Woehnker worked for appellee-defendant Cooper Tire & Rubber Company ("Cooper") as a forklift operator. On March 11, 1999, Woehnker slipped on a patch of ice while dismounting a forklift and suffered injuries to his "head, back, extremities and neurological system." Appellant's Appendix at 9. Cooper accepted Woehnker's claim for worker's compensation benefits and provided medical care and temporary total disability benefits.

On October 20, 1999, Woehnker's treating physician determined that Woehnker had reached maximum medical improvement ("MMI") and imposed permanent work restrictions. Cooper subsequently terminated Woehnker's temporary total disability benefits without issuing the written notice required by Indiana Code Section 22–3–3–7(c). Woehnker disagreed with Cooper's termination of his benefits and petitioned the Board for an IME pursuant to section 22–3–3–7(c) on November 4, 1999.

On November 30, 1999, Woehnker received from Cooper an unsigned and undated report of claim status/request for IME ("Form 38911"); two days later, Woehnker received a signed and dated Form 38911. Both forms listed "PERMANENT RESTRICTIONS, MAXIMUM MEDICAL IMPROVEMENT" as the grounds for Cooper's termination of Woehnker's temporary total disability ben-

efits. On December 6, 1999, Woehnker renewed his request for an IME in a letter to the Board in which he enclosed the Form 38911 he had received from Cooper on November 30.

On January 25, 2000, a member of the Board's Ombudsman Division denied Woehnker's IME request in a letter reading in relevant part as follows:

> I am in receipt of the Report of Claim Status (State Form 38911) regarding the above matter. I have investigated this claim and found that this Division will not be appointing an independent medical examination (IME) in this case. *The Board has held that no IME will be appointed in those cases where the injured party has failed to comply with directed medical treatment or testing. Failure to adhere to directed medical care is a forfeiture of this remedy.* I have discussed this matter with Peggy Downard, the administrator with Cooper, the involved self-insured employer, who provided the enclosed documentation [1] showing repeated instances of lack of cooperation on Mr. Woehnker's part.

*Id.* at 8 (emphasis added).

On February 16, 2000, Woehnker filed an application for adjustment of claim seeking "all benefits to which he is entitled under the Worker's Compensation Act of Indiana, including an [IME] to determine whether Plaintiff is entitled to additional medical care." *Id.* at 9. On March 1, 2001, a Board hearing member denied Woehnker's IME request in an order reading in relevant part as follows:

> [Woehnker]'s Request For An [IME] is denied, consistent with previous decision of [the] Ombudsman. .... *While* [Cooper] *is encouraged to properly and completely draft Form 38911 to include all*

---

1. The "enclosed documentation" does not appear in the record before us on appeal.

*reasons for benefit termination, failure to list reason that* [Woehnker] *not complying with treatment plan* in immediate case, was rectified through provision of additional documentation.

If [Woehnker] desires a second opinion, he shall have to arrange and pay for same.

*Id.* at 3 (emphasis added).

On March 12, 2000, Woehnker petitioned for a hearing before the full Board. On August 29, 2001, a majority of the Board adopted the hearing member's decision and affirmed the denial of Woehnker's IME request. Woehnker now appeals.

### Discussion and Decision

In *Waldridge v. Futurex Industries, Inc.,* 714 N.E.2d 783 (Ind.Ct.App. 1999), *trans. denied* (2000), we explained that

[t]he Indiana Worker's Compensation Act ["the Act"] is the exclusive remedy of an employee injured in an accident arising out of and in the course of employment with [his] employer. .... Generally on appeal, we review the Board's decision to determine whether substantial evidence, together with any reasonable inferences that flow from such evidence, support the Board's findings and conclusions.

But where the question before the court is primarily a legal question, we do not grant the same degree of deference to the Board's decision.

*Id.* at 784–85 (citations omitted). "This court is not bound by the agency's interpretations of law. When an agency interprets its own statute, the reviewing court should afford the agency's interpretation great weight, but the court is not bound by the agency's interpretation and should reverse if the agency incorrectly interpreted the statute." *Houchins v. Kittle's Home Furnishings,* 589 N.E.2d 1190, 1192 (Ind. Ct.App.1992) (citation omitted).

Indiana Code Section 22–3–3–7 governs the payment and termination of temporary disability benefits and reads in relevant part as follows:

(c) Once begun, temporary total disability benefits may not be terminated by the employer unless:

(1) the employee has returned to any employment;

(2) the employee has died;

(3) the employee has refused to undergo a medical examination under section 6 of this chapter or has refused to accept suitable employment under section 11 of this chapter;

(4) the employee has received five hundred (500) weeks of temporary total disability benefits or has been paid the maximum compensation allowed under section 22 of this chapter; or

(5) the employee is unable or unavailable to work for reasons unrelated to the compensable injury.

In all other cases the employer must notify the employee in writing of the employer's intent to terminate the payment of temporary total disability benefits and of the availability of employment, if any, on a form approved by the board. If the employee disagrees with the proposed termination, the employee must give written notice of disagreement to the board and the employer within seven (7) days after receipt of the notice of intent to terminate benefits. If the board and employer do not receive a notice of disagreement under this section, the employee's temporary total disability benefits shall be terminated. Upon receipt of the notice of disagreement, the board shall immediately contact the parties, which may be by telephone or other means, and attempt to resolve the disagreement. If the board

is unable to resolve the disagreement within ten (10) days of receipt of the notice of disagreement, the board shall immediately arrange for an evaluation of the employee by an independent medical examiner. The independent medical examiner shall be selected by mutual agreement of the parties or, if the parties are unable to agree, appointed by the board under IC 22–3–4–11. If the independent medical examiner determines that the employee is no longer temporarily disabled or is still temporarily disabled but can return to employment that the employer has made available to the employee, or if the employee fails or refuses to appear for examination by the independent medical examiner, temporary total disability benefits may be terminated. If either party disagrees with the opinion of the independent medical examiner, the party shall apply to the board for a hearing under IC 22–3–4–5.

■ Here, Cooper terminated Woehnker's temporary total disability benefits because he had reportedly reached MMI—one of the "other cases" contemplated by the statute—but failed to notify him in writing before doing so. Woehnker notified both Cooper and the Board of his disagreement with the termination of his benefits in his IME petition dated November 4, 1999. "If the board is unable to resolve the disagreement within ten (10) days of receipt of the notice of disagreement, the board *shall* immediately arrange for an evaluation of the employee by an independent medical examiner." IND.CODE § 22–3–3–7(c). (Emphasis added.) The question then becomes whether this provision requires the Board to immediately arrange for an IME ten days after receipt of an employee's notice of disagreement.

■ Our foremost obligation in construing a statute is to determine and apply legislative intent. *See Houchins*, 589 N.E.2d at 1193. "A statute containing the term 'shall' generally connotes a mandatory as opposed to a directory import. However, 'shall' may be construed as directory instead of mandatory 'to prevent the defeat of the legislative intent.'" *Hancock County Rural Elec. Membership Corp. v. City of Greenfield*, 494 N.E.2d 1294, 1295 (Ind.Ct.App.1986) (citations omitted), *trans. denied* (1987); *see also Murray v. Hamilton County Sheriff's Dep't*, 690 N.E.2d 335, 340 (Ind.Ct.App.1997) ("Ordinarily, the word 'shall' in a statute is presumed to be mandatory, unless it is clear from the context that the General Assembly intended otherwise.") (citations omitted). Cooper offers several grounds for its interpretation of "shall" as discretionary, none of which we find persuasive since we "construe the Act and resolve doubts in its application of terms in favor of the employee so as to effectuate the Act's humanitarian purpose to provide injured workers with an expeditious and adequate remedy." *Waldridge*, 714 N.E.2d at 785.

The purpose of an IME is to determine expeditiously whether an employee is entitled to continue receiving temporary total disability benefits notwithstanding their proposed termination by an employer. Should the Board be unable to resolve a disagreement between the employer and the employee, an IME is the only avenue for an employee to challenge the employer's proposed termination of benefits. Absent any indication of contrary legislative intent, and consistent with the humanitarian purpose of the Act, we construe the legislature's usage of "shall" in this instance as being of mandatory import and therefore as requiring the Board to immediately arrange for an IME if it is unable to resolve a disagreement between an employer and an employee within ten days of

receipt of the employee's notice of disagreement.[2]

 An employee's right to avail himself of an IME is not unlimited, however. Indiana Code Section 22–3–3–4(c) provides in relevant part that an employee's refusal to accept medical treatment provided by an employer "shall bar the employee from all compensation otherwise payable during the period of the refusal, *and his right to prosecute any proceeding under IC 22–3–2 through IC 22–3–6 shall be suspended and abated until the employee's refusal ceases. The employee must be served with a notice setting forth the consequences of the refusal under this section.*" (Emphasis added.) In the instant case, the Board denied Woehnker's IME request because of his alleged failure to comply with medical treatment.[3] There is no evidence, however, that Cooper ever served Woehnker a notice setting forth the consequences of his refusal to comply or that Woehnker was refusing to comply at the time he requested an IME. Thus, the Board incorrectly

concluded that Woehnker had forfeited his right to request an IME under section 22–3–3–7(c). We therefore reverse the Board's denial of Woehnker's request for an IME.

Reversed.

RILEY, J., and MATHIAS, J., concur.

---

2. Our construction of "shall" as being of mandatory import is further buttressed by our supreme court's synopsis of the benefits termination process under section 22–3–3–7(c):

> In certain instances (for example, death or reemployment), the employer may terminate temporary total disability benefits without notice to the employee. In all other circumstances, the employer must notify the employee and the Board of its intent to terminate benefits. The employee must then give notice within seven days to the employer and the Board of any disagreement; otherwise benefits are terminated. If the parties cannot reach an agreement, the Board *must* arrange for an evaluation of the employee by an independent medical examiner, who is to determine whether the employee remains temporarily disabled.

> *Cox v. Worker's Comp. Bd. of Indiana,* 675 N.E.2d 1053, 1055 (Ind.1996) (emphasis added). Although the *Cox* court was not specifically called upon to construe "shall" as used with respect to an IME, it clearly considered that term as being used in its mandatory

sense. Additionally, we note that section 22–3–3–7(c) provides that "[u]pon receipt of the [employee's] notice of disagreement, the board *shall* immediately contact the *parties* .... and attempt to resolve the disagreement." (Emphases added.) There is no indication that the Board immediately contacted *both* Cooper and Woehnker upon receipt of either of Woehnker's notices of disagreement.

3. While the Board ombudsman simply denied Woehnker's IME request on this basis, the Board hearing member apparently relied thereon both to uphold Cooper's termination of benefits and to affirm the ombudsman's denial of Woehnker's IME request. However, Cooper did not terminate Woehnker's benefits on this basis, and there is no indication that Woehnker was ever notified that this basis would be considered as grounds for termination. We are therefore troubled by the hearing member's statement that Cooper's failure to list this reason for its termination of Woehnker's benefits on Form 38911 "was rectified through provision of additional documentation." Appellant's Appendix at 3.