In re the PATERNITY OF BABY W.

Clinton Sharp, Appellant–Petitioner,

v.

Mark and Sherri Fields, Appellee–Respondents.

No. 11A05–0203–JV–00110.

Court of Appeals of Indiana.

Sept. 6, 2002.

Thomas M. Weinland, Frazier & Associates, Indianapolis, IN, Attorney for Appellant.

David W. Stone, IV, Anderson, IN, Gregory A. Smith, Washington, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

Clinton Sharp appeals from the trial court's grant of a motion to dismiss his paternity action. We affirm.

### Issues

Sharp raises several issues for our review, which we consolidate and restate as follows:

1. Whether the pre-birth adoption notice provided to Sharp by the prospective adoptive parents substantially complied with the requirements of the statute;

2. Whether Indiana Code section 31–19–9–15 is a "nonclaim" statute that is not subject to equitable exceptions;

3. Whether Sharp's initiation of DNA testing within the thirty day period provided by statute for a putative father to take action was sufficient to preserve his rights;

4. Whether Indiana Code section 31–19–9–15 is unconstitutional as applied.

### Facts and Procedural History

M.W. became pregnant in late 2000. She wished to place the child for adoption and Mark and Sherri Fields were interested in adopting the child. M.W. alleged that Sharp was the father of her unborn child. Gregory Smith, the Fields' attorney, contacted Sharp by phone and then sent a follow-up letter dated May 4, 2001, which reads in pertinent part as follows:

... As I indicated in our phone conversation, I represent some folks here that will be petitioning to adopt a child, not yet born, but whom you were named as the possible father. You are referred to under Indiana Law as a "putative father." That is someone who is named as or claims to be the father of a child born out of wedlock but who has not been legally proven to be the child's father.

As we discussed, my clients have been selected to be the adoptive parents by [M.W.] She is willing to consent to this adoption. Since she has named you as the "putative father," I must advise you of her intentions and give you the opportunity to contest the adoption by filing an objection in the adoption court or by filing a paternity action yourself, or to consent to the adoption. You indicated to me you wished to consent to the adoption. As I indicated to you, I would need to send you certain documents. I enclose herewith the following:

1. Notice pursuant to Indiana Code section 31–19–3–4

2. Denial of Paternity and Waiver of Notice of Adoption Proceedings;

3. Return Envelope, postage prepaid.

Appendix to the Brief of Appellant Clinton Sharp at 36. The "Notice pursuant to Indiana Code section 31–19–3–4" provided to Sharp is in virtually identical form to that prescribed in section 31–19–3–4:

Clinton Sharp, who has been named as the father of the unborn child of [M.W.], or who claims to be the father of the unborn child, is notified that [M.W.] has expressed an intention to secure an adoptive placement for the child.

If Clinton Sharp seeks to contest the adoption of the unborn child, the putative father must file a paternity action to establish his paternity in relation to the unborn child not later than thirty (30) days after the receipt of this notice.

If Clinton Sharp does not file a paternity action not more than thirty (30) days after receiving this notice, or having filed a paternity action, is unable to establish paternity in relation to the child under IC 31–14 or the laws applicable to a court of another state when the court obtains jurisdiction over the paternity action, the putative father's consent to the adoption or the voluntary termination of the putative father's parent-child relationship under IC 31–35–1, or both, shall be irrevocably implied and the putative father loses the right to contest the adoption, the validity of his implied consent to the adoption, the termination of the parent-child relationship, and the validity of his implied consent to the termination of the parent-child relationship. In addition, the putative father loses the right to establish paternity of the child under IC 31–14 or in a court of another state when the court would otherwise be competent to obtain jurisdiction over the paternity action, except as provided in IC 31–19–9–17(b).

Nothing [M.W.] or anyone else says to Clinton Sharp relieves Clinton Sharp of his obligations under this notice.

Under Indiana law, a putative father is a person who is named as or claims that he may be the father of a child born out of wedlock but who has not yet been legally proven to be the child's father.

For purposes of this notice, Clinton Sharp is a putative father under the laws in Indiana regarding adoption.

Appellant's Appendix at 33–34. Following the text were lines for the date and for Attorney Smith's signature, which were left blank. Then followed an acknowledgment of receipt of the notice and the contents thereof and a line for Sharp's signature.

Baby W was born on May 12, 2001, and was immediately taken into custody pursuant to a "request for detention" filed by the Clay County Office of Family and Children and placed in foster care with the Fieldses. On May 21, 2001, Sharp sent a letter to Attorney Smith responding to the May 4 letter and stating that "paternity needs to be established, before, [sic] I can consent to adoption...." Appellant's Appendix at 38. Sharp did not sign and return any of the documents sent to him by Attorney Smith.

In October of 2001, M.W., Baby W, and Sharp underwent DNA testing which revealed that Sharp was Baby W's father to a 99.99% probability. Appellant's Appendix at 9. Sharp paid for the test. Attorney Smith sent the test results to Sharp with a letter dated November 9, 2001, which stated in pertinent part as follows:

As I indicated to you on the phone, enclosed are seven pages of lab testing results concerning the DNA paternity tests.... As you can see the probability of paternity is 99.99%. [M.W.] is still willing to consent to and allow the adoption of the child by my clients provided you will do so as well. If you do not she has indicated that she will withdraw her consent and we will dismiss the adoption petition. She will then be free to pursue a paternity action against you and obtain a child support Order plus attorney fees and costs such as pre-natal and post natal expenses.

We would prefer to proceed with the adoption. The cleanest approach is for you and her to sign the consent forms previously provided to you . . . .

I am enclosing herewith a consent form for you to use again. I am also enclosing a NOTICE form under IC 31–19–4–5. It starts a 30 day time frame running within which you must take action or lose certain rights. If you sign and return the Consent form, then you need do nothing else and this matter can be concluded without further involvement on your part. The mother will likewise have consented and given up her rights and can not pursue any remedy against you concerning the child.

Appellant's Appendix at 108A. Enclosed was a "Notice pursuant to Indiana Code 31–19–4–5" that provided, in substantially similar form to the language prescribed by the statute, that:

Clinton Sharp, who has been named as the father of the child born to [M.W.] on May 12, 2001, or who claims to be the father of the child born to [M.W.] on May 12, 2001, also known as the "putative father" of the child, is notified that [M.W.] has secured an adoptive placement for the child and consented to an adoption and that a Petition for Adoption has been filed in the office of the Clerk of Daviess County, Indiana Circuit Court, at the Court House in Washington, IN 47501.

If Clinton Sharp, wishes to contest the adoption of the child, he must file a motion to contest the adoption in accordance with Ind.Code 31–19–10–1 in the above named Court, or he must file a paternity action to establish his paternity in relation to the unborn child under I.C. 31–14 not later than thirty (30) days after the receipt of this notice.

If Clinton Sharp:

(1) does not file:

(A) a Motion to contest the adoption; or

(B) a paternity action under I.C. 31–14;

within thirty (30) days after receiving service of this notice; or

(2) after filing a paternity action under I.C. 31–14 fails to establish paternity; the above named Court will hear and determine the Petition for Adoption. Clinton Sharp's consent to the adoption will be irrevocably implied and he will lose the right to contest either the adoption or the validity of his implied consent to the adoption. He will lose his right to establish his paternity of the child under Indiana Code 31–14.

Nothing the mother, [M.W.], or anyone else says to Clinton Sharp can relieve Clinton Sharp of the obligations imposed upon him under this Notice.

Clinton Sharp is referred herein as the "putative father" because under Indiana law, a putative father is a person who is named as or claims that he may be the father of a child born out of wedlock but who has not yet been legally proven to be the child's father. For purposes of this Notice, Clinton Sharp is a putative father under the laws in Indiana regarding adoption.

Appellant's Appendix at 106–07. On November 27, 2001, the Fieldses filed in the Daviess County Circuit Court a petition for adoption. Sharp filed in that action on December 3, 2001, a motion contesting the petition for adoption. He then filed in the Clay Circuit Court on December 12, 2001, a Verified Petition to Establish Paternity and for Custody of Minor Child. The Fieldses then intervened in the Clay Circuit Court paternity action and filed a motion to dismiss on the ground that the court lacked jurisdiction to entertain Sharp's paternity action because of his fail-

ure to timely commence an action for paternity after receiving the pre-birth notice pursuant to Indiana Code section 31–19–3–1.[1] Sharp responded to the motion, and it was originally set for a hearing. However, the hearing was subsequently vacated and the trial court granted the Fields' motion to dismiss without explanation. Sharp now appeals.

### Discussion and Decision

### I. Standard of Review[2]

■ The standard for appellate review of a trial court's grant of a motion to dismiss pursuant to Trial Rule 12(B)(1) is a function of what occurred in the trial court. *GKN Co. v. Magness,* 744 N.E.2d 397, 401 (Ind.2001). The standard of appellate review is dependent upon: (i) whether the trial court resolved disputed facts; and (ii) if the trial court resolved disputed facts, whether it conducted an evidentiary hearing or ruled on a "paper record." *Id.*

■ If the facts before the trial court are not in dispute, then the question of subject matter jurisdiction is purely one of law and no deference is afforded to the trial court's conclusion. *Id.* The standard of review is de novo. *Id.*

■ If the facts before the trial court are in dispute, then our review focuses on whether the trial court conducted an evidentiary hearing. *Id.* Where the trial court conducts an evidentiary hearing, we give its factual findings and judgment deference. *Menard Inc. v. Dage–MTI, Inc.,* 726 N.E.2d 1206, 1210 (Ind.2000). In re-

viewing a trial court's findings of fact and judgment, we will reverse only if they are clearly erroneous. *Magness,* 744 N.E.2d at 401. Where the facts are in dispute but the trial court rules on a paper record without conducting an evidentiary hearing, then no deference is afforded to the trial court's factual findings or judgment because under those circumstances, a court of review is "in as good a position as a trial court to determine whether the trial court has subject matter jurisdiction." *MHC Surgical Ctr. Assocs., Inc. v. State Office of Medicaid Policy & Planning,* 699 N.E.2d 306, 308 (Ind.Ct.App.1998).

In this case, the trial court did not hold an evidentiary hearing nor did it enter findings of fact with its judgment. We therefore review the dismissal of Sharp's action de novo.

### II. Substantial Compliance with Indiana Code section 31–19–3–4

Sharp first contends that the pre-birth adoption notice he received did not substantially comply with the requirements of the statute because the letter accompanying the notice misadvised him of his options and failed to advise him that he should retain his own counsel.

■ This court, in *In the Matter of Paternity of Baby Girl,* 661 N.E.2d 873 (Ind. Ct.App.1996), explained the purpose of the pre-birth adoption notice statute as follows:

Enacted in 1993, [Indiana Code section] 31–3–1–6.4[3] now allows a putative

---

1. The Fieldses also claimed that Sharp's paternity action should be dismissed because the same (or, in this case, a similar) action was pending in the Daviess Circuit Court pursuant to their petition for adoption. As the parties have exclusively addressed the jurisdictional claim on appeal, we will restrict our discussion to that claim as well.

2. We note that neither party has included a "standard of review" in its brief. The new appellate rules specifically state that "[t]he argument must include for each issue a concise statement of the applicable standard of review...." Ind. Appellate Rule 46(A)(8)(b).

3. Now codified at Indiana Code chapter 31–19–3.

father to consent to an adoption before the birth of the child. The underlying purpose of this provision is to facilitate the adoption process as it is a vehicle for prospective adoptive parents to obtain consent of the putative father before the birth of the child. Essentially, this provision gives the adoptive parents the opportunity to a pre-birth start to the adoptive process and enables these parents to have the adoption finalized as close to the birth of the child as possible.

This provision is consistent with the entire adoption procedure which derives from the state's interest in protecting and promoting the welfare of children by expediting their entry into a suitable, stable family unit. The process seeks to avoid any subsequent disruptive interference by the natural parent whose rights have been extinguished, and who may pose a threat to the parent-child relationship created by the adoption. Thus, based upon this public policy, an adoption statute should not be so strictly construed as to defeat its purposes.

*Id.* at 877 (footnote added, citations omitted). Thus, substantial compliance with the statutory notice provision will be sufficient if the party receives notice which achieves the purpose for which the statute was intended. *Id.*

In *Baby Girl,* the attorney for the prospective adoptive parents sent to the putative father in March 1994, a letter informing him that he could be the father of the unborn baby and that the mother intended to put the baby up for adoption following birth. The letter further informed him that the law requires notice to the alleged father and that the alleged father can waive prior to the birth of the child any additional or subsequent notice of the proceedings. Enclosed with the letter was a consent form and a copy of the *post-birth* notice statute. The putative father ac-

knowledged receipt of the letter and enclosures, but initiated no court proceedings. Baby Girl was born on June 7, 1994. The putative father filed a petition to establish paternity on July 27, 1994, and blood tests subsequently determined that he was Baby Girl's father. The prospective adoptive parents filed their petition for adoption on September 21, 1994, which the putative father contested. The paternity and adoption actions were consolidated, and the trial court ultimately denied the putative father's motion to contest and granted the petition for adoption. The putative father appealed, claiming that the pre-birth notice he received did not substantially comply with the statute. We agreed with the putative father, concluding that the copy of an inapplicable statute, the consent form, and a letter which informed the putative father that he "may" be the father of the unborn child did not constitute substantial compliance with the pre-birth notice statute. *Id.* at 878. The putative father was not only not informed of the pre-birth action necessary to contest he adoption but was affirmatively misled to believe that he was not required to take any action until after the child was born. *Id.*

Sharp contends that he was misled by the correspondence he received from Attorney Smith and argues that his case should be controlled by the holding in *Baby Girl.* He claims that the letter he first received from Attorney Smith stated that he had "the opportunity to contest the adoption by filing an objection in the adoption court or by filing a paternity action yourself, or to consent to the adoption," which constituted misadvice since "the only right [he] had after receiving the notice ... was to file a formal paternity action in court within thirty days." Brief of Appellant at 13. We note first that the argument Sharp made to the trial court was that the notice was defective on its

face because, although there was line for Attorney Smith's signature and for the date, the notice was unsigned and undated. *See* Appellant's Appendix at 85 (Response) and 81 (Memorandum of Law). A party may not object based upon one ground at trial and argue a different basis upon appeal. *Francies v. Francies*, 759 N.E.2d 1106, 1113 (Ind.Ct.App.2001), *trans. denied*. Failure to adhere to this rule waives review of the issue on appeal. *Anderson v. Scott*, 630 N.E.2d 226, 232 (Ind.Ct.App. 1994), *trans. denied.*

However, because of the significance of the parental relationship, we will briefly address the merits of Sharp's claim on appeal. Even if the statement of which Sharp now complains could have been misconstrued, he received the notice contemplated by the statute. Unlike the putative father in *Baby Girl*, Sharp was unequivocally named as the putative father and received, in verbatim form, the pre-birth notice required by Indiana Code section 31–19–3–4.[4] The notice explicitly states that "nothing ... anyone ... says to [Sharp] relieves [Sharp] of his obligations under this notice." Appellant's Appendix at 34; Ind.Code § 31–19–3–4. Thus, Sharp was alerted that the statutory notice, and only the notice, contained the required legal information, and any statements made in the letter that were inconsistent with the terms of the notice should not have been considered.

Sharp also contends that in determining whether or not there was substantial compliance with the statute we should take into account the fact that Attorney Smith did not advise Sharp that he represented a party adverse to Sharp and that Sharp should obtain his own counsel. We note that Attorney Smith's letter plainly stated that he represented the people who were interested in adopting the child. This was fair notice that the attorney represented interests adverse to Sharp's. The statute does not require that the notice advise the putative father of his right to be represented by counsel.[5] The pre-birth notice received by Sharp substantially complied with the dictates of the statute.

### III. Indiana Code section 31–19–9–15 as a "Nonclaim" Statute

Last year, a panel of this court held in *In re Paternity of M.G.S.*, 756 N.E.2d 990 (Ind.Ct.App.2001), *trans. denied*, that Indiana Code section 31–19–9–15 is a "nonclaim" statute not subject to equitable exception. *Id.* at 997. The relevant portion of Indiana Code section 31–19–9–15 states:

> The putative father's consent to adoption of the child is irrevocably implied without further court action if the father:
>
> (1) fails to file a paternity action:
>
> > (A) under IC 31–14; or
> >
> > (B) in a court located in another state that is competent to obtain jurisdiction over the paternity action;

---

4. We also note that the objection Sharp made in the trial court, that the notice was defective on its face for failure to be signed and dated by Attorney Smith, is untenable. The statute does not require that the notice be signed. *See* Ind.Code ch. 31–19–3.

5. Sharp includes as an issue in his brief that "[t]he termination of Sharp's parental rights in adoption proceedings without his being informed of his right to counsel violated Sharp's statutory and constitutional right to counsel." Brief of Appellant at 19. To the extent Sharp contends by this issue that the trial court was required to advise him of the right to counsel, we note that Sharp's parental rights have not been terminated in the paternity action which is the subject of this appeal. We also note that Sharp was represented by counsel in these proceedings. Any claim that his right to be advised of his right to counsel was violated should be raised in the adoption proceedings.

not more than thirty (30) days after receiving actual notice under IC 31–19–3 of the mother's intent to proceed with an adoptive placement of the child, regardless of whether the child is born before or after the expiration of the thirty (30) day period. . . .

Ind.Code § 31–19–9–15(a). The court in *M.G.S.* held that this statute is jurisdictional and that a putative father forgoes his right to establish paternity if he fails to file his paternity action within thirty days of receiving the pre-birth notice. *Id.* at 998. Sharp contends that *M.G.S.* was wrongly decided.

We have carefully reviewed the reasoning of the court in *M.G.S.* Sharp's argument that section 31–19–9–15 "must be considered a statute of limitation" fails to convince us that the holding of *M.G.S.* was erroneous. Accordingly, we follow the reasoning of that case in addressing Sharp's next argument.

## IV. Sharp's Substantial Compliance with Indiana Code section 31–19–9–15

■ Sharp next contends that although he failed to strictly comply with the dictates of Indiana Code section 31–19–9–15 by filing a paternity action within thirty days of receiving the pre-birth notice, he substantially complied by initiating DNA testing within that time period.

■ In *M.G.S.*, we noted that it was clear that the putative father "intended to play an active role in his child's life and had no intention of relinquishing his parental rights by consenting to an adoption." 756 N.E.2d at 1000. He received the pre-birth notice in April 2000, but did not file a paternity action within thirty days. M.G.S. was born in May 2000. The putative father visited the baby in the hospital and bought a car seat and some clothes for her. He registered as a putative father with the Indiana Department of Health within thirty days of her birth and instituted a paternity action in July 2000. However, because his failure to file a paternity action within thirty days resulted in his consent to adoption being irrevocably implied under section 31–19–9–15, we held that even his actions clearly demonstrating an intent to establish parental rights did not entitle him to equitable deviation from the thirty-day time limit of the statute. *Id.* at 1001.

We hold the same to be true herein. Sharp received an unequivocal notice that clearly informed him of the course of action he was required to take if he wished to contest the adoption: "If [you] seek[ ] to contest the adoption of the unborn child, [you] must file a paternity action to establish [your] paternity in relation to the unborn child not later than thirty (30) days after receipt of this notice." Appellant's Appendix at 33. He failed to do so. We also note that the letter by which Sharp informed Attorney Smith that he wished to have a DNA paternity test demonstrated no intent to take responsibility for the child in the event the DNA testing confirmed he was Baby W's father. The letter stated that "paternity needs to be established, before, [sic] I can consent to adoption, because it would not be correct or proper for me to consent to the adoption of a child that may not be my child." Appellant's Appendix at 38. Even if we were inclined to hold that initiating DNA testing could constitute substantial compliance with section 31–19–9–15, we would not do so in this instance because Sharp failed to evince any intent to play an active role in the child's life in seeking the testing.

## V. Constitutional Claims

■ Finally, Sharp contends that Indiana Code section 31–19–9–15 is unconstitutional as applied. However, we note that Sharp did not present any constitutional claims to the trial court. Challenges to the constitutionality of a civil statute

may be waived if they could have been raised to the trial court but were not. *Duncan v. Duncan,* 764 N.E.2d 763, 769 (Ind.Ct.App.2002). Moreover, this court has already addressed a due process challenge to the statute in *M.G.S.* and held that because the putative father received clear notice of the potential adoption and advised of his obligation to file a paternity action within thirty days to preserve his right to contest the adoption, and because it was his own failure to act on the notice that deprived him of the opportunity to be heard in the adoption proceedings, his constitutional rights were not violated. 756 N.E.2d at 1006. Sharp has not raised any additional argument that would cause us to hold otherwise in this case.[6]

## Conclusion

Sharp received the pre-birth notice contemplated by Indiana Code section 31–19–9–15. The statute is a nonclaim statute, and thus, Sharp's failure to file a paternity action within thirty days of receiving the notice resulted in his consent to the adoption of Baby W being irrevocably implied. The statute does not violate his due process rights. Accordingly, the trial court properly dismissed his untimely petition to establish paternity. The judgment of the trial court is affirmed.

Affirmed.

RILEY, J., and MATTINGLY–MAY, J., concur.

---

**6.** We also note, as the author of this opinion did in concurring in *M.G.S.*, that if the adoption proceedings have not already been concluded, it would be both appropriate and desirable to appoint a guardian ad litem to represent Baby W in those proceedings. As noted in *M.G.S.*, even though Sharp's petition to establish paternity was appropriately dismissed as time-barred, a paternity petition filed by Baby W would not be similarly barred. A guardian ad litem could assess the situation and proceed in Baby W's best interests since she is incompetent by reason of her age to do for herself. *See M.G.S.*, 756 N.E.2d at 1007 (Robb, J., concurring).