**MONTGOMERY AVIATION, INC.,**
**Appellant–Respondent,**

v.

**Dale A. HAMPTON, Appellee–Petitioner.**

No. 93A02–9406–EX–330.

Court of Appeals of Indiana,
Second District.

May 16, 1995.

Michael V. Gooch, Harrison & Moberly, Indianapolis, for appellant.

Morris L. Klapper, Klapper Isaac & Parish, Indianapolis, for appellee.

SULLIVAN, Judge.

Montgomery Aviation, Inc. (Montgomery), appeals from a determination of the Indiana Worker's Compensation Board (Board) in favor of Dale Hampton (Hampton), a Montgomery employee who injured his right knee in the course of his employment. We restate the issue as follows:

Did the Board correctly determine that medical expenses for surgery performed upon Hampton's knee were necessary and that Montgomery was therefore obligated to pay?

We affirm the Board's findings.

Hampton injured his right knee in May of 1990 while working for Montgomery. Montgomery supplied a physician, Dr. Leaming, who diagnosed Hampton as having severely torn cartilage. Dr. Leaming then proceeded to treat Hampton for almost two years. During the course of his treatment, Dr. Leaming performed two arthroscopic surgeries upon Hampton's knee. The first took place in July of 1990; the second was performed in January of 1991.

Even after the surgeries, Hampton suffered pain from the injured knee. At that point, Hampton consulted an orthopedic surgeon, Dr. Merill Ritter.[1] Dr. Ritter performed a third arthroscopic surgery on February 22, 1992, over one year after the last surgery performed by Dr. Leaming. Montgomery's insurer refused to pay for this surgery. After hearing the evidence, the Hearing Member found that Montgomery was obligated to pay the amount of $1,978.41 for the arthroscopy Dr. Ritter had performed.[2] It is this determination which is the subject of the present dispute.

Montgomery takes the position that, because the third surgery was not medically "necessary," the procedure does not fall into the category of a "medical expense," which it is obligated to pay under the Worker's Compensation Act, I.C. 22–3–3–4 (Burns Code Ed. Repl.1994). It points out that Indiana has no working definition of what medical expenses are to be provided. It urges this court to adopt a definition of "necessary" similar to that adopted by statute in Illinois.[3] That definition, Montgomery argues, would condition the employer's financial responsibility upon whether "the doctor reasonably believed the treatment [would] have a curative or relieving effect" upon the injury. Brief of Appellant at 21.

As the arthroscopy was performed solely at Hampton's insistence, Montgomery argues, the testimony before the Hearing Member conclusively showed that neither Dr. Leaming nor Dr. Ritter[4] believed a third arthroscopic surgery would either cure Hampton's injury or relieve his discomfort. As this is the case, Montgomery contends that the Board's finding that it is responsible for the expenses of Hampton's third, unsuccessful surgery could not rest on a rational basis.

Hampton, in turn, argues that sufficient evidence was presented for the Board to make a rational determination that the third arthroscopy was, indeed, "necessary" as per I.C. 22–3–3–4. He contends that the testimony of both Dr. Leaming and Dr. Ritter demonstrated sufficient facts which showed that the surgery was useful in that it did, in fact, show the reason for Hampton's continuing pain.[5] Additionally, Hampton points to

1. At several points, Montgomery asserts that Dr. Ritter's services were never authorized by either it or its insurer. However, we note that Montgomery's insurer did pay several of Dr. Ritter's expenses. Although the alleged lack of authorization is mentioned several times, Montgomery never seriously contends that this is the reason it is not obligated to pay for Hampton's knee surgery; instead its argument rests squarely upon the allegation that the third arthroscopy was not "necessary."

2. The Full Board adopted the findings of the Hearing Member.

3. Ill.Rev.Stat. ch. 48, § 138.8(a) (Smith–Hurd 1986) reads in part as follows:
   "The employer shall provide and pay for ... all necessary medical, surgical and hospital services thereafter incurred, limited, however, to that which is reasonably required to cure or relieve from the effects of the accidental injury."

4. Montgomery also repeatedly directs our attention to the fact that Hampton sought Dr. Ritter's assistance independent of either its own or its insurance company's permission. However, we note that Montgomery's insurer did have knowledge that Dr. Ritter was treating Hampton, as it paid some of his bills. Further, that Hampton did not have Montgomery's permission to see a second physician has little bearing upon the issue, to wit: whether or not the Board correctly determined that the surgery was necessary and that, therefore, Montgomery is obligated to pay for the third arthroscopic procedure.

5. Although Dr. Ritter indicated that diagnoses should not be the principle reason for arthroscopy, the surgical procedure may be a valuable adjunct to other diagnostic procedures.

several statements made by both Dr. Ritter and Dr. Leaming which demonstrate the necessity of the surgery. Thus, he concludes, it could not be the case that the evidence upon which the Board's decision was premised was devoid of support. Montgomery retorts that both doctors' testimony in this regard was so speculative as to be wholly lacking in probative value.

■ In resolving this dispute, it is important to bear in mind this court's guiding principle when reviewing the factual determinations of an administrative tribunal: we will consider only that evidence which tends to support the determination of the Board, together with any uncontradicted adverse evidence. *Talas v. Correct Piping Co.* (1982) Ind., 435 N.E.2d 22, 26. Only where the evidence upon which the Board's decision rests can lead unalterably to a conclusion opposite that reached by the Board will we reverse. *Id.* In so doing, this court will address only questions of law; we will neither reweigh evidence nor reassess witness credibility. *Grand Lodge Free & Accepted Masons v. Jones* (1992) 4th Dist., Ind.App., 590 N.E.2d 653, 654.

Under I.C. 22–3–3–4(a),[6] Montgomery is obligated to pay "such surgical, hospital and nursing services and supplies as the attending physician or the worker's compensation board may deem necessary." Our Supreme Court has previously determined that expenses for which the employer is liable may include non-curative, prospective palliative measures, such as nursing services and physical therapy, which would tend to enhance an injured person's mobility or to reduce his pain. *See Talas, supra,* 435 N.E.2d 22. However, although the analytical framework enumerated by the court in *Talas* is helpful to the present issue, it is not dispositive. *Talas* neither defined "necessary," nor did it declare whether non-curative, retrospective expenses, such as the expenses here, would be included within its ambit; instead, future courts were instructed to take the specific circumstances of the case into account when making such determinations. 435 N.E.2d at 28–29.

■ Here, we conclude that sufficient evidence exists for the Board to have reasonably concluded that Hampton's third arthroscopic surgery was, indeed, a "necessary" expense within the meaning of that statute. Both Dr. Leaming and Dr. Ritter agreed that the third arthroscopy could have presented a condition which was undetectable by other methods. Given Hampton's circumstances, Dr. Leaming stated that he probably would have opted for another surgery as well. Indeed, the surgery did explain the reason Hampton suffered such pain, i.e., extensive chondromalchia of the patella.

Moreover, Dr. Ritter stated that he "would anticipate that [Hampton] would improve" after the surgery. Record at 106. Though Montgomery emphasizes that the arthroscopy did not ultimately improve Hampton's condition, we note that, in such surgery, no one can give a guarantee; there is never an assurance of cure. The fact that Dr. Ritter expected the surgery to ameliorate Hampton's pain is substantial evidence upon which the Board could base its conclusion that the surgery was, indeed, necessary. As substantial evidence is presented, we will not reverse the conclusions of the Board. *See Grand Lodge, supra,* 590 N.E.2d at 654–55.

Additionally, we cannot countenance Montgomery's argument that the surgery was performed solely because Hampton "insisted" that it be done. Such an argument rests upon the premise that surgeons are willing to perform invasive procedures without good cause, and that this was such a case. As noted above, both doctors believed the surgery might have been helpful. Additionally, the record does not demonstrate that Hampton in any way forced Dr. Ritter to perform surgery; instead, it indicates that, like all persons with a debilitating injury, Hampton wished that everything possible be done to

---

6. *Talas, supra,* 435 N.E.2d 22, recognizes that I.C. 22–3–3–4 is separated into four separate time periods in which expenses may be awarded an injured employee. Here, Montgomery cites both subsection (a), and subsection (b), which employs the language "reasonably necessary." However, the parties appear to agree that subsection (a) is the proper section to be applied because the surgery at issue occurred after the injury, but prior to an adjudication of permanent impairment.

alleviate his pain and infirmity. The Board acted neither capriciously nor arbitrarily in concluding that the arthroscopy was necessary.

From a public-policy standpoint, it may be that our legislature will at some future time define the terms "necessary" and "reasonably necessary" in I.C. 22–3–3–4. Nevertheless, the evidence here did give rise to the conclusion that the medical experts did, in fact, think the surgery was likely to have an improving effect. Therefore, even were we to determine that Illinois' restrictive definition of "necessary" was an appropriate one to impose upon I.C. 22–3–3–4,[7] we would, as yet, find that the evidence upon which the Board based its decision was sufficient to meet that definition. Dr. Ritter's comments, both before and after surgery, indicate that he held a reasonable belief the arthroscopy to some extent would relieve Hampton's pain.

The award of the Board is affirmed.

KIRSCH and ROBERTSON, JJ., concur.

---

**7.** It is wholly possible, however, that contrary to Montgomery's urgings, Indiana might not adopt such a restrictive definition. We note that the *Talas* court opined:

"It is the longstanding rule of this jurisdiction that terms contained in our Workmen's Compensation Act are to be liberally construed so as to effectuate the humane purposes of the Act; doubts in the application of terms are to be resolved in favor of the employee, for the passage of the Act was designed to shift the burden of a work-related injury from the injured employee to the industry and, ultimately, to the consuming public." 435 N.E.2d at 28.