**Susan KRAUSE, Appellant–Plaintiff,**

v.

**INDIANA UNIVERSITY—PURDUE UNIVERSITY AT INDIANAPOLIS, Appellee–Defendant.**

**No. 93A02–0606–EX–488.**

Court of Appeals of Indiana.

May 24, 2007.

Randal M. Klezmer, Klezmer & Associates, Scott M. Dillon, Scott M. Dillon, L.L.C., Indianapolis, IN, Attorneys for Appellant.

Kathleen K. Shortridge, Ann H. Stewart, Germaine Winnick Willett, Ice Miller LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Susan Krause appeals the order of the Worker's Compensation Board ("the Board") as to its holding that Indiana University—Purdue University at Indianapolis (IUPUI) was not required to pay for Krause's medical treatment by and prescription drugs from unauthorized providers; and IUPUI cross-appeals the Board's order that it provide further medical care and treatment to Krause.[1]

We reverse in part, affirm in part, and remand for further consideration.

### ISSUES

Krause's Issue: Whether IUPUI illegally discontinued its provision of medical services to Krause in mid–1998.

IUPUI's Issue: Whether the Board erred when it ordered IUPUI to provide further medical care and treatment to Krause.

### FACTS

Krause was hired by IUPUI in 1990 and worked as a bookkeeper in Parking Services. On June 14, 1991, Krause was moving a cylinder of change and injured her lower back. Krause's claim for worker's compensation was accepted by IUPUI.

Between May of 1992 and June of 1994, Krause underwent four lumbosacral surgeries for the work-related injury to her back. Her surgeon, Dr. Terry Trammel, referred Krause to Dr. Robert Gregori[2] for pain management treatment related to her injury. IUPUI paid for all the medical expenses associated with Krause's surgeries and for her care by Dr. Gregori. On July 24, 1995, Dr. Gregori gave Krause a 24% permanent partial impairment rating to the whole person.

In his pain management care of Krause for her low back pain, Dr. Gregori prescribed Vicodin. In September of 1993, Krause was taking 9 to 12 pills per day; but under Dr. Gregori's care, her Vicodin consumption was reduced to 2 or 3 pills per day. In 1994, she was taking from 3 to 5 pills per day. In January of 1995, Dr.

---

1. We heard oral argument in this matter on January 25, 2007, in Indianapolis. We thank counsel for their able presentations.

2. Krause asserts that she was a patient of Dr. Gregori "from September 24, 1993 through June 10, 1998." Krause's Br. at 10. However, in his September 24, 1993, reporting to Dr. Trammel on his care of Krause, Dr. Gregori states that Krause "return[ed] to [Gregori] for further pain management" after "having last been seen in May 1993." (App.123).

Gregori prescribed "four Vicodin per day." (Ex. C., p. 124). In January of 1996, Krause reported to Dr. Gregori "that the Vicodin d[id] not help as much"; he suggested "discontinuing [the Vicodin] and trying Ultram," gave her a sample of the latter, and instructed her to continue the Vicodin "if that is ineffective." *Id.* at 128.

In May of 1996, Krause phoned Dr. Gregori's office and asked for additional Vicodin; Krause was advised that she had been provided with written prescriptions to last until August of 1996. On May 24, 1996, Dr. Gregori wrote to Krause advising that he would "no longer provide professional services to [her]" because she had "violated [their] pain medication contract." *Id.* at 136. On July 3, 1996, Jamie Pheifer—"Legal Assistant to [a named attorney] and Susan Krause's son"—wrote to Lynn Sinn, the worker's compensation claims adjuster for IUPUI, regarding "client" Krause. (App.109.) Pheifer indicated that the medication matter had been one of confusion, and he further requested that Krause "be assigned a new workman's [sic] compensation doctor ... so her disability is not terminated." (App.109). Sinn contacted Dr. Gregori and asked that he reconsider his decision to terminate treatment of Krause. Dr. Gregori agreed to continue providing services to Krause, and he saw her on August 5, 1996. Krause signed "a pain contract," agreeing to take no more than 4 Vicodin per day. *Id.* at 138. When Dr. Gregori saw Krause on February 12, 1997, she accused him of lacking "compassion relative to her pain complaints with the primary intention of her discussion being request for increasing her narcotics." *Id.* at 142. Dr. Gregori recorded that Krause "continue[d] to be seeking increasing doses of narcotics" despite doing "fairly well on her scheduled Vicodin" four times a day. *Id.*

When Krause saw Dr. Gregori on August 4, 1997, she reported "getting along relatively well" on "her scheduled Vicodin four times a day." *Id.* at 145. On January 28, 1998, she reported her pain as "fairly stable." *Id.* at 146. However, six months later, on June 10, 1998, Krause reported that the Vicodin was "less effective than it had been." *Id.* at 147. Dr. Gregori "suggested possibly alternating the Vicodin" with Darvocet and gave her a prescription for Darvocet. *Id.*

On June 26, 1998, Krause called Sinn and advised that she "c[ouldn't] take it with Dr. Gregori any more"; they did "not see eye to eye"; and she "d[idn't] want him to be [her] doctor." (App.118). On June 29, 1998, Krause called Sinn and advised that she could not "get along" with Dr. Gregori and "need[ed] to be referred to another doctor." (App.119).

Sinn wrote to Krause on June 29, 1998, and explained that Dr. Gregori was her "attending physician for [her] Worker's Compensation claim," that she "need[ed] to discuss medication issues with Dr. Gregori or [her] family physician," and that IUPUI would "not cover the cost of the visit to [her] family physician." (Ex. A, p. 63). Sinn also inquired on June 29, 1998, whether Krause had "legal counsel representing [her] on the Worker's Compensation issue," and Krause's written response was that she had "several legal counsels [sic]." *Id.* at 65. On July 8, 1998, Krause wrote to Sinn, stating that she "realized" that the "worker's compensation office recognize[d] Dr. Gregori as [her] attending physician"; she further stated that the Vicodin dosage was no longer easing her pain, and she believed she "require[d] a higher dosage." (App.120, 121). Krause wrote that she had "no faith and trust" in Dr. Gregori and "request[ed] a change in doctor[ ]." *Id.* at 121. On July 30, 1998, "per [her] legal council [sic]," Krause

wrote to inform Sinn that she had an appointment on August 13th with Dr. Dennis Wagner at the Indiana University Pain Clinic. *Id.* at 122. Thereafter, Krause was treated by Dr. Wagner as well as family physicians Dr. Richard Kiovsky and Dr. Clayton Atkins; none of these physicians were authorized by IUPUI to treat Krause for her low back pain.

Based on Krause's work-related injury, IUPUI was to pay Krause 500 weeks of disability benefits. Further, based upon the date of the injury, her average weekly wage, and the 24% permanent partial impairment rating, Krause received a permanent partial impairment settlement of $14,400.00, which was paid to her on April 16, 2002. On May 23, 2002, a claim status report informed Krause that her 500 weeks of worker's compensation benefits would soon be fully paid and that she should inquire about possible benefits from the Second Injury Fund.

On July 3, 2002, Krause filed an application for adjustment of claim, seeking additional compensation due to the work place injury suffered on June 14, 1991. On August 5, 2002, the final disability payment to Krause was issued. On that same day, August 5, 2002, Krause filed a petition for entry into the Second Injury Fund. On August 20, 2002, an agreement between Krause and IUPUI provided for additional weeks of compensation based upon her average weekly wage and percentage of impairment. In an order dated September 24, 2002, the Board found that Krause was still permanently totally disabled and confirmed the additional compensation from the Second Injury Fund.

On April 14, 2003, Krause filed a motion to reinstate application for review, seeking resolution by the Board of unpaid medical expense issues. On December 1, 2005, an evidentiary hearing was held by the Board's Single Hearing Member G. Terrence Corriden ("Member") to consider several issues, two of which are argued on appeal: whether IUPUI should pay for Krause's treatment by Drs. Wagner, Kiovsky, and Atkins, and whether the Board should exercise its discretion to order that IUPUI provide a treating physician and ongoing services and supplies for Krause's ongoing complaints. Evidence of the above-recounted facts was introduced, including the records of Krause's treatment by Drs. Wagner, Kiovsky, and Atkins. The records reflect that all three doctors prescribed pain medications other than Vicodin for Krause, and that Dr. Wagner believed spinal cord stimulation would be "the best avenue to pursue in attempting to treat her pain." (App.131).

On January 31, 2006, the single Member issued his order, which included the following findings of fact:

- ... the medical treatment of Dr. Gregori as provided by [IUPUI] was reasonable.
- ... the medication of [Vicodin] prescribed by Dr. Gregori was presumptively reasonable medical treatment for [Krause]'s medical condition, especially in light of the fact that the record is void of any medical opinion or conclusion to the contrary, combined with the fact that the only complaints came from [Krause] who was seeking a wider assortment of medication in terms of types and amounts from her self-prescribed quest for additional narcotics.
- ... [Krause] was not entitled to seek medical treatment of her choice because she unilaterally terminated her medical treatment with Dr. Gregori without any basis to do so.
- ... [Krause]'s request for further medical treatment fails because there is no reasonable medical evidence upon which the Board may rely to find that further medical treatment can limit or

reduce [Krause]'s present permanent partial impairment or her level of functioning.

(App.60–61). The single Member's order concluded that IUPUI was "not obligated to provide further medical treatment to [Krause] or to pay for any medical treatment received by [Krause] after the services provided by Dr. Gregori." *Id.*

Krause sought review by the full Board. The Board heard the matter on May 9, 2006. On May 24, 2006, the Board issued its order, which adopted verbatim the four findings above. However, the Board did not adopt the single Member's finding as to future medical treatment, but rather the Board

... found that [IUPUI] is not relieved from its obligation to provide further medical treatment and care for [Krause]'s work-related injuries; however, [Krause] is obligated to comply with [IUPUI]'s provider's treatment and [Krause] is not entitled to direct her own care nor the prescriptive drugs which she demands or otherwise requests.

(App.6). Accordingly, it ordered

that [IUPUI] is not relieved from its obligation to provide further medical treatment and care for [Krause]'s work-related injuries; however, [Krause] is obligated to comply with [IUPUI]'s provider's treatment and [Krause] is not entitled to direct her own care nor the prescriptive drugs which she demands or otherwise requests.

*Id.*

## DECISION

■■■ When we review a decision of the Worker's Compensation Board, we are bound by the factual determinations of the Board, and we will not disturb them unless the evidence is undisputed and leads inescapably to a contrary conclusion. *Daniel-*

*son v. Pratt Industries, Inc.,* 846 N.E.2d 244, 247 (Ind.Ct.App.2006). We neither reweigh the evidence presented nor assess the credibility of the witnesses. *Id.* Although we are not bound by the Board's interpretations of law, we will reverse the Board's decision only if the Board incorrectly interpreted the Act. *Id.*

### I. Krause's Issue:

■■■ Krause argues that IUPUI illegally discontinued its provision of medical services to her. She asserts that IUPUI failed to comply with the following statutory provision:

After an employee's injury has been adjudicated by agreement or award on the basis of permanent partial impairment ... the employer may continue to furnish a physician or surgeon and other medical services and supplies, and the worker's compensation board may within the statutory period for review as provided by section 27 of this chapter, on a proper application of either party, require that treatment by that physician and other medical services and supplies be furnished by and on behalf of the employer as the worker's compensation board may deem necessary to limit or reduce the amount and extent of the employee's impairment. The refusal of the employee to accept such services and supplies, when provided by or on behalf of the employer, shall bar the employee from all compensation otherwise payable during the period of the refusal, and his right to prosecute any proceeding under IC 22–3–2 through IC 22–3–6 shall be suspended and abated until the employee's refusal ceases. *The employee must be served with a notice setting forth the consequences of the refusal under this section. The notice must be in a form prescribed by the worker's compensation board.* No com-

pensation for permanent total impairment, permanent partial impairment, permanent disfigurement, or death shall be paid or payable for that part or portion of the impairment, disfigurement, or death which is the result of the failure of the employee to accept the treatment, services, and supplies required under this section. . . .

Ind.Code § 22–3–3–4(c) (emphasis added).

Krause asserts that she was never provided the notice required by statute, to wit: that her refusal to accept treatment by Dr. Gregori would result in her not being provided pain treatment services by any other physician. IUPUI responds that it "did not terminate its medical treatment and care of Krause" but rather *Krause* terminated her treatment and, therefore, it "was not required" to provide the statutory notice to Krause. IUPUI's Br. at 22. IUPUI also reminds us that the record reflects that at the time Krause stopped seeing Dr. Gregori, she knew she was required to have IUPUI's approval of a treating physician in order for those medical services to be paid for by IUPUI and that she had legal counsel. However, neither the statute nor common law provide that in such circumstances, the statutory notice to the employee is not necessary, and this mandate may be ignored by the employer.

We have repeatedly emphasized that courts will construe the Worker's Compensation Act liberally in favor of the employee. *Cavazos v. Midwest General Metals Corp.,* 783 N.E.2d 1233, 1239 (Ind.Ct.App. 2003); *Luz v. Hart Schaffner & Marx,* 771 N.E.2d 1230, 1232 (Ind.Ct.App.2002); *Memorial Hosp. v. Szuba,* 705 N.E.2d 519, 522 (Ind.Ct.App.1999); *Walker v. State,* 694 N.E.2d 258, 266 (Ind.1998); *R.L. Jeffries Trucking Co., Inc. v. Cain,* 545 N.E.2d 582, 588 (Ind.Ct.App.1989). We have also strictly construed the Worker's

Compensation Act to require compliance in matters requiring notice to employees concerning benefits under the Act. *See Cavazos,* 783 N.E.2d at 1242–43; *Woehnker v. Cooper Tire & Rubber Co.,* 764 N.E.2d 688, 691–92 (Ind.Ct.App.2002). Further, we are not bound by the Board's interpretations of the law and will reverse if the Board incorrectly interpreted the Worker's Compensation Act. *Cavazos,* 783 N.E.2d at 1239.

■ It is undisputed that Krause was permanently totally disabled as a result of an injury she suffered in the course of her IUPUI employment. Pursuant to the adjudication of same, Krause was entitled to the provision of medical treatment by IUPUI. The record clearly establishes that Krause informed IUPUI that Dr. Gregori was no longer an acceptable treating physician. The law states that the "refusal of the employee to accept such services . . . provided by . . . the employer, shall bar the employee from all compensation . . . . during the period of refusal." I.C. § 22–3–3–4(c) (emphasis added). We further note that in another provision of the Act prescribing compensation amounts, the statute provides that for an injury occurring at the time of Krause's, there is a specified "maximum compensation, exclusive of medical benefits." I.C. § 22–3–3–22(*o*). Therefore, the legislature acted to except medical benefits when it defined "maximum compensation" under the Act. *Id.* However, the legislature did not do so in the provision addressing the employee's refusal of services. Thus, the legislature knows how to except medical benefits from inclusion in compensation when it so intends. *See United States Gypsum v. Indiana Gas Co.,* 735 N.E.2d 790, 797 (Ind.2000) (statutory language shows "legislature knows how to say and include municipal utilities when it so desires"); *see also Andrianova v. Indiana Family and*

*Social Servs. Admin.*, 799 N.E.2d 5, 16 (Ind.Ct.App.2003) (when language used in one section of statute but omitted from another, court presumes omission to be intentional and purposeful). Hence, we conclude that medical treatment is included when the instant provision suspends "all compensation" upon the employee's refusal—triggering the required statutory notice. Accordingly, a clear reading of the provision requires that if an employee refuses to accept "all compensation," including treatment services provided by the employer, the "employee must be served with a notice setting forth the consequences of the refusal ... in a form prescribed by the worker's compensation board." I.C. § 22–3–3–4(c).

We further note after Krause's treatment by Dr. Gregori terminated, she was treated by Dr. Dennis L. Wagner of the I.U. Pain Clinic for more than two years. We can appreciate the concern of employers that they not be required to pay for questionable or possibly inappropriate medical treatment. However, such a concern would not appear to be warranted or have any basis where, as here, the "unauthorized" treating physician is part of the employer's corporate entity.

In addition, the required use of a prescribed statutory form further protects the employer from any allegation that the employee was not properly informed of the consequence of refusing medical treatment authorized by the employer. IUPUI has failed to take advantage of such statutory protection.

IUPUI failed to provide the required prescribed statutory notice to Krause. Therefore, the Board erred when it failed to find that IUPUI was required to provide medical services to Krause after July

of 1998, when she stopped being treated by Dr. Gregori. Accordingly, we reverse and remand to the Board for further consideration consistent with this opinion.

## II. *IUPUI's Issue:*

■ IUPUI argues that the Board erred when it found IUPUI was "obligated" to provide ongoing medical care to Krause because the Board "did not find that such care would limit or reduce the amount or extent of Krause's impairment, as required by statute." IUPUI's Br. at 4. It notes that Indiana Code section 22–3–3–4(a) provides that the employer "shall furnish" medical care to the employee "prior to an adjudication of permanent impairment," but that Krause's permanent impairment was adjudicated on July 24, 1995. Also, subsequent to such adjudication, "[a]fter an employee's injury has been adjudicated," the Board "may" order the employer to provide treatment "as the [Board] may deem necessary to limit or reduce the amount and extent of the employee's impairment." I.C. § 22–3–3–4(c).[3] IUPUI then asserts that because the Board made no finding that future treatment was necessary to limit or reduce the amount and extent of Krause's impairment, it erred when it concluded that IUPUI was "obligated" to provide such care.

As Krause responds, the Board expressly stated that one issue before it was

[w]hether the Board should exercise its discretion in this case under IC 22–3–3–4(c) to order [IUPUI] to provide a treating physician and ongoing services and supplies for [Krause]'s ongoing complaints that the Board deems necessary to reduce [Krause]'s impairment.

---

**3.** The Member's order noted that there was no reasonable medical evidence supporting the contention that the unauthorized care limited or reduced Krause's permanent partial impairment or level of functioning. This finding was not adopted by the Board.

(App.5). The Board then found that IUPUI should "provide further medical treatment and care for [Krause]'s work-related injuries." *Id.* at 6.

We acknowledge that a specific factual finding in this regard would have more clearly satisfied the requirement of the statute—that the Board has found such further treatment was "necessary to limit or reduce the amount and extent of the employee's impairment." I.C. § 22–3–3–4(c). However, whether Krause requires future medical treatment is a factual determination, and we are bound by the factual determinations of the Board. *See Danielson,* 846 N.E.2d at 247. Because the Board found that IUPUI was obligated to provide further medical care and treatment for Krause's work-related injuries, it necessarily made the implicit factual determination that the treatment was necessary to limit or reduce the amount and extent of her impairment. Further, the record abundantly supports such a factual determination. It is undisputed that as a result of her work-related injury, Krause is permanently totally disabled. Further, all medical records before the Board support the inference that Krause will need medical treatment for that injury indefinitely. Because the evidence supports the finding that future medical treatment is necessary, the Board did not err when it ordered that IUPUI provide such treatment.

■ IUPUI also argues that the Board's authority to order the employer to provide medical treatment under Indiana Code section 22–3–3–4(c) is limited to "the statutory period for review . . . as provided in section 27 [I.C. § 22–3–3–27]." I.C. § 22–3–3–4. The period for review provided in Indiana Code section 22–3–3–27 for modifying or changing a worker's compensation award is "two (2) years from the last day for which compensation was paid under the original award." Thus, IUPUI

claims, because Krause's last compensation under the original award was paid on August 5, 2002, the Board's jurisdiction ended two years later. Krause responds that the statutory provisions, together, simply require that she file her claim within two years of August 5, 2002, and that she did so by filing her motion to reinstate application for review on April 14, 2003. We agree with Krause. Moreover, the Board found that Krause filed her claim within the statutory period for review, and we pay due deference to the Board's interpretation of the statute it administers "in light of its expertise." *Ballard v. Book Heating & Cooling, Inc.,* 696 N.E.2d 55, 56 (Ind.Ct. App.1998).

■ Finally, IUPUI argues that the Board lacks authority to order an employer to provide future medical services to an employee for a work-related injury for "the employee's entire lifetime." IUPUI's Br. at 15. It asserts that the cases which have affirmed such awards of future benefits,—*Gregg v. Sun Oil Co.,* 180 Ind.App. 379, 388 N.E.2d 588 (Ind.Ct.App.1979); *Talas v. Correct Piping,* 435 N.E.2d 22 (Ind.1982); *Grand Lodge Free & Accepted Masons v. Jones,* 590 N.E.2d 653 (Ind.Ct. App.1992); and *Bloomington Hospital v. Stofko,* 705 N.E.2d 515, 519 (Ind.Ct.App. 1999), *aff'd on reh'g* 709 N.E.2d 1078 (Ind. Ct.App.1999)—are either factually distinguishable or "should be overruled." *Id.* at 19. We are not persuaded and find them to clearly support the Board's authority to act as it did here.

In *Gregg,* we found that the Worker's Compensation Act provided a "statutory right to seek an extension of the award of continuing medical expenses." 388 N.E.2d at 591. In *Talas,* Indiana's Supreme Court held that an employee who had been totally permanently disabled by a workplace injury was "entitled to an award of the expenses necessary" for the future

medical expenses necessitated by the medical condition resulting from his work-related injury. 435 N.E.2d at 31. In *Grand Lodge*, we affirmed the Board's award of palliative medical treatment to reduce pain suffered by the employee as a result of his work-related injury. 590 N.E.2d at 655. And in *Stofko*, we affirmed the Board's "discretion to award continuing medical expense payments" for future medical expenses shown to be necessary to treat the employee's work-related injury. 705 N.E.2d at 519. Given the decades of authority indicating that the Board does have the authority to award future medical benefits to an injured employee, with no responding legislative changes to the statutory provision providing for such benefits, we decline to hold that the Board's award is contrary to law. Therefore, we affirm the Board's decision in this regard.

In conclusion, we reverse in part, affirm in part, and remand for further consideration consistent with this opinion.

BAKER, C.J., and ROBB, J., concur.