**Robert L. YOUNG, d/b/a Bob Young Logging, Appellant–Defendant,**

v.

**Glen MARLING, Appellee–Plaintiff.**

**No. 93A02–0805–EX–457.**

Court of Appeals of Indiana.

Jan. 27, 2009.

Ty M. Craver, Rori L. Goldman, Hill Fulwider McDowell Funk & Matthews, Indianapolis, IN, Attorneys for Appellant.

John H. Shean, Shean Law Offices, Bloomington, IN, Attorney for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Robert Young, doing business as Bob Young Logging ("BYL"), appeals from a decision of the full Worker's Compensation Board ("the Board") affirming the single hearing officer's decision that Glen Marling is entitled to reimbursement for certain medical treatments he received after an injury arising out of and in the course of his employment with BYL. Specifically, BYL argues that the Board's decision is erroneous because Marling is not entitled to reimbursement under the Indiana Worker's Compensation Act (the Act) because the treatments were unauthorized and the findings of fact and conclusions of law are insufficient to support the conclusion that Marling is entitled to reimbursement for these treatments. Because we find that the medical treatments were authorized by a physician chosen by BYL's insurance carrier and that the Board's findings of fact and conclusions of law are sufficient to support the award, we affirm.

### Facts and Procedural History

On April 12, 2004, while working at the Victor Oolitic Stone Company near Bloomington, Indiana, Marling fell from a log skidder that he was operating and injured his back, hips, wrists, legs, and shoulders. Marling was an employee of BYL, and he had worked for BYL as a logger for over twenty-five years. BYL's worker's compensation insurance carrier, American Interstate Insurance Company ("the Insurer"), began paying temporary total disability (TTD) payments to Marling. The Insurer directed Marling to seek treatment with a number of healthcare providers, including Dr. Kam Tiwari of the Pain Management Center of Southern Indiana. Tr. p. 16.

Marling began seeing Dr. Tiwari for treatment in February 2005. Marling's treatment took the form of medications, a TENS unit, examinations, injections, radiofrequency ablations, and physical therapy. By July 2005, Dr. Tiwari placed Marling at maximum medical improvement (MMI). On August 28, 2005, Dr. Tiwari issued a permanent partial impairment (PPI) rating of 19%. In September 2005, the Insurer stopped paying TTD benefits and issued State Form 38911 for the termination of TTD benefits because of Dr. Tiwari's MMI finding. Marling requested an Independent Medical Examination via State Form 38911.

The Insurer contacted Dr. Tiwari in October 2005 and informed him that only medication, and no other type of therapy, should be prescribed for Marling. *Id.* at 207. However, Marling continued to visit Dr. Tiwari every six to eight weeks, and Dr. Tiwari continued to treat Marling for his chronic pain using the same combination of treatments as before.

On October 25, 2005, Marling met with Dr. David Steiman, who had been appointed by the Board to conduct the independent medical examination. Dr. Steiman agreed with Dr. Tiwari that Marling was at MMI and further found that Marling was not a surgical candidate and would not benefit from additional treatment. Marling then filed an application for an adjustment of claim with the Board.

In June 2006, Dr. Tiwari issued a report that Marling could not return to work in his present condition. Marling then retained a vocational specialist, Constance Brown, who determined that Marling was permanently and totally disabled. In October 2006, Dr. Tiwari stopped treatment for Marling but then revised his previous finding and determined that, although Marling's condition was stable, he was not at MMI. Soon thereafter, the Insurer arranged for Marling to be evaluated by Dr. John McLimore, who found Marling at MMI and issued a PPI rating of 5%. Dr. McLimore recommended a functional capacity evaluation, which was performed in January 2007. The next month, Marling retained Dr. Daniel Brown for an examination, and Dr. Brown found Marling at MMI and issued a 30% PPI rating.

On April 2, 2007, a hearing was held by a single hearing member of the Board in which the parties stipulated certain facts and presented argument and evidence. The issues as stipulated by the parties were as follows:

1. Whether Mr. Marling is entitled to permanent total disability benefits as defined under the Indiana Worker's Compensation Act.

2. If Mr. Marling is not entitled to permanent total disability benefits under the Indiana Worker's Compensation Act; what level of impairment (PPI rating) is Mr. Marling entitled to for injuries sustained arising out of and in the course [of] his employment on April 12, 2004.

3. Whether [BYL] is responsible for medical bills incurred at the Pain Management Center of Southern Indiana after August 28, 2005.

4. Whether [BYL] is responsible for any of [Marling's] ongoing medical care and prescription medication.

Appellant's App. p. 18.

On August 9, 2007, the single hearing member issued an order, which included the following pertinent findings of facts and conclusions thereon:

6. On August 28, 2005[,] when Dr. Tiwari found [Marling] to be at [MMI] and assigned a 19% [PPI] he opined that [Marling's] intractable pain would continue and that he would have periodic exacerbations.

7. Dr. Tiwari also noted that [Marling] was depressed, unable to sleep, and able to do activities of daily living only with substantial modifications. [Marling] continues to treat with Dr. Tiwari.

\*    \*    \*    \*    \*    \*

12. [Marling] credibly testified that he continues to suffer from chronic pain, spasms, and occasional numbness. He takes pain medication and medication for his depression on a daily basis.

13. On June 22, 2006, Dr. Tiwari completed a "Physical Capacities Evaluation" in which he stated that [Marling] could not return to work in his present condition and that he would require continued pain management. Dr. Tiwari placed restrictions on lifting, bending, hyper extending and lateral movements and allowed [Marling] to travel less than one hour

and to sit, stand, and walk for less than one hour in an eight hour work day.

14. The only vocational report in the record was done by Constance Brown. Her initial report July 20, 2006 concluded that [Marling] was totally and permanently disabled due to [Marling's] education, 11th grade education, narcotic pain medication use and his restrictions. . . .

### CONCLUSIONS OF LAW

\*  \*  \*  \*  \*  \*

3. [Marling] is entitled to ongoing medical care as well as reimbursement or payment for the care incurred after he was found to be at [MMI] on August 28, 2005[,] through the present.

*Id.* at 9–11. The single hearing member then found that Marling was permanently and totally disabled and awarded Marling maximum compensation and benefits, including ongoing medical treatment for his chronic pain. *Id.* at 11. BYL appealed the single hearing member's determination to the full Board, who affirmed the single hearing member's decision and award in its entirety without change. BYL now appeals.

### Discussion and Decision

On appeal, BYL argues that the Board's decision is erroneous because Marling is not entitled to reimbursement as a matter of law because the treatments were unauthorized and the findings of fact and conclusions of law are insufficient to support the conclusion that Marling is entitled to reimbursement for these treatments.[1] We disagree.

"On appeal, we review the decision of the Board, not to reweigh the evidence or judge the credibility of witnesses, but only to determine whether substantial evidence, together with any reasonable inferences that flow from such evidence, support the Board's findings and conclusions." *Bertoch v. NBD Corp.,* 813 N.E.2d 1159, 1160 (Ind.2004) (quotation omitted). As to the Board's interpretation of the law, an appellate court employs a deferential standard of review to the interpretation of a statute by an administrative agency charged with its enforcement in light of its expertise in a given area. *Christopher R. Brown, D.D.S., Inc. v. Decatur County Mem'l Hosp.,* 892 N.E.2d 642, 646 (Ind. 2008). The Board will only be reversed if it incorrectly interpreted the Act. *Id.* However, the Act must be liberally construed to effectuate its humane purposes, and doubts in the application of its terms are to be resolved in favor of the employee. *Id.* at 649.

We employ a two-tiered standard of review in evaluating the Board's decision. *Wholesalers, Inc. v. Hobson,* 874 N.E.2d 622, 627 (Ind.Ct.App.2007). We first review the record to determine if there is any competent evidence of probative value to support the Board's findings. Next, we examine the findings to see if they are sufficient to support the decision. *Id.* Here, the single hearing member entered written findings, and the Board found that the hearing officer's decision should be adopted. "Such adoption is sufficient to attribute to the . . . [B]oard the explicit written findings of the single hearing member and to permit appellate re-

---

**1.** On appeal, BYL does not challenge the Board's finding that Marling is permanently and totally disabled.

view accordingly." *Dial X–Automated Equip. v. Caskey*, 826 N.E.2d 642, 644 (Ind.2005). Therefore, we examine the evidence recited in the single hearing member's decision as well as the findings and conclusions set out therein, as these constitute the Board's decision.

The Act provides compensation for personal injury or death by accident arising out of and in the course of employment. Ind.Code § 22–3–2–2. Indiana Code § 22–3–3–4 governs the payment of medical services and treatments after an accident and provides in part:

(a) *After an injury and prior to an adjudication of permanent impairment,* the employer shall furnish or cause to be furnished, free of charge to the employee, an attending physician for the treatment of his injuries, and in addition thereto *such surgical, hospital and nursing services and supplies as the attending physician or the worker's compensation board may deem necessary* . . . . .

(b) *During the period of temporary total disability resulting from the injury,* the employer shall furnish the physician services, and supplies, and the worker's compensation board may, on proper application of either party, require that treatment by the physician and services and supplies be furnished by or on behalf of the employer as the worker's compensation board may deem reasonably necessary.

(c) *After an employee's injury has been adjudicated by agreement or award on the basis of permanent partial impairment and within the statutory period for review in such case as provided in section 27 of this chapter,* the employer may continue to furnish a physician or surgeon and other medical services and supplies, and the worker's compensation board may within the statutory period

for review as provided in section 27 of this chapter, on a proper application of either party, require that treatment by that physician and other medical services and supplies be furnished by and on behalf of the employer as the worker's compensation board may deem necessary to limit or reduce the amount and extent of the employee's impairment. The refusal of the employee to accept such services and supplies, when provided by or on behalf of the employer, shall bar the employee from all compensation otherwise payable during the period of the refusal, and his right to prosecute any proceeding under IC 22–3–2 through IC 22–3–6 shall be suspended and abated until the employee's refusal ceases. The employee must be served with a notice setting forth the consequences of the refusal under this section. . . .

(d) If, because of an emergency, or because of the employer's failure to provide an attending physician or surgical, hospital, or nursing services and supplies, or treatment by spiritual means or prayer, as required by this section, or because of any other good reason, *a physician other than that provided by the employer* treats the injured employee during the period of the employee's temporary total disability, or necessary and proper surgical, hospital, or nursing services and supplies are procured within the period, the reasonable cost of those services and supplies shall, subject to the approval of the worker's compensation board, be paid by the employer.

Ind.Code § 22–3–3–4 (emphases added).

As an initial matter, we note that BYL is seeking a reversal of the award to Marling regarding the reimbursement of some of the medical care provided by Dr. Tiwari between August 28, 2005, the date he issued the 19% PPI rating, and August 9,

2007, the date of the award. Appellant's Br. p. 15. On appeal, BYL argues that because the Insurer told Dr. Tiwari not to prescribe any treatments for Marling's pain other than medication,[2] the examinations, injections, radiofrequency ablations, and physical therapy that Dr. Tiwari provided after that point were unauthorized. According to BYL, the Board's award of the payment for these treatments is erroneous because, in its view, Indiana Code § 22–3–3–4(d) governs, and the Board did not determine whether the treatments were of an emergency nature, a result of the employer's failure to provide medical care, or procured for any other good reason.

In support of its argument, BYL cites *Daugherty v. Industrial Contracting & Erecting*, 802 N.E.2d 912 (Ind.2004), where our Supreme Court set forth the considerations the Board must address when determining, pursuant to Indiana Code § 22–3–3–4(d), whether an employer is responsible for an employee's unauthorized medical treatments. In that case, the employee, Daugherty, sustained injuries to his knee after a fall at work. Daugherty underwent extensive treatment provided by his employer, but the treatment did not relieve the pain in his knee. After one of the employer-provided doctors found his injury to be permanent and quiescent and assigned a PPI rating of 10%, Daugherty requested and received an independent medical examination. The independent medical examiner agreed that Daugherty was at MMI. Still experiencing pain, Daugherty then contacted on his own an orthopedic surgeon, who recommended a total knee replacement surgery. Daugherty communicated this recommendation

to his employer's worker's compensation insurance carrier, who informed him that the treatment was not authorized at that time. Daugherty nevertheless underwent the surgery, which proved to be a success. Our Supreme Court recognized that the general rule under Indiana Code § 22–3–3–4 is that an employee is not free to elect at the employer's expense additional treatments or other physicians than those tendered by the employer. *Daugherty*, 802 N.E.2d at 915. However, the statute provides that an employee may select medical treatment (1) in an emergency, (2) if the employer fails to provide needed medical care, or (3) for other good reason. *Id.* at 916. Declining to address whether the insurance company's decision not to authorize the surgery was synonymous with a failure to provide medical care, *id.* at 917 n. 1, the Court found that the employer was responsible for the cost of the surgery under the third exception. *Id.* at 919. Under that exception, if the employee obtains medical treatment different from that provided by the employer without authorization but in good faith, and it is determined that the treatment provided by the employer was inadequate and the unauthorized treatment was medically reasonable and necessary, the employer should be responsible for payment. *Id.* at 918.

However, the rule in *Daugherty* does not apply to this case. By its terms, Indiana Code § 22–3–3–4(d) applies if "*a physician other than that provided by the employer* treats the injured employee during the period of the employee's temporary total disability.*" I.C. § 22–3–3–4(d) (emphasis added). In Indiana, the employer or the employer's insurer chooses the treating physician instead of the employ-

---

2. Although Dr. Tiwari's notes reflect that the Insurer directed him to prescribe only medication, Tr. p. 207, the Insurer nevertheless continued paying for the cost of both medi-

cation and the TENS unit. On appeal, BYL does not dispute these costs. Appellant's Br. p. 7 n. 2.

ee.[3] *Furno v. Citizens Ins. Co. of Am.,* 590 N.E.2d 1137, 1140 (Ind.Ct.App.1992), *trans. denied.* This employer's right under the Act has been said to protect the employer's interests. *In re Henderson,* 64 Ind.App. 581, 116 N.E. 315, 316–17 (1917). On the other hand, the Act as a whole is designed "for the humanitarian purpose of providing injured workers with an expeditious and adequate remedy." *Sims v. United States Fid. & Guar. Co.,* 782 N.E.2d 345, 352 (Ind.2003). Medical treatment for the injury is a vital part of the remedy provided by the Act. Further, the Act was created to shift the economic burden for injuries connected with employment from the employee to the employer. *Id.* at 351.

■ BYL argues that the Insurer's communication to Dr. Tiwari transformed the treatments he was prescribing from authorized to unauthorized. Although the insurance company directed Dr. Tiwari not to prescribe treatments other than medication and the TENS unit, Dr. Tiwari was nevertheless a physician provided to Marling by his employer, BYL, via the Insurer. Tr. p. 16 ("[Marling:] Tracy Boone referred me onto Kam Tiwari, pain specialist. [Counsel:] Who's Tracy Boone? [Marling:] She is my case manager. [Counsel:] At the insurance company? [Marling:] At American Interstate Insurance."); *see also* Appellant's Br. p. 2. Because BYL chose Dr. Tiwari, Indiana Code § 22–3–3–4(d) does not apply. Further, there is nothing in that section to suggest that it is the insurer, rather than the authorized treating physician, that determines treatment. Indeed, throughout

Indiana Code § 22–3–3–4, it is the physician, the Board, or both, rather than the employer or insurer, who decide whether medical treatment is authorized. I.C. § 22–3–3–4(a) ("as the attending physician or the worker's compensation board may deem necessary"), –4(b) ("as the worker's compensation board may deem reasonably necessary"), –4(c) ("as the worker's compensation board may deem necessary to limit or reduce the amount and extent of the employee's impairment"), –4(d) ("subject to the approval of the worker's compensation board"), –4(g) ("an agreement between an employer and the employer's employees that has the approval of the board and that binds the parties"). We find that the Insurer's unilateral decision to stop paying for Dr. Tiwari's medical treatments after it had chosen him as an authorized provider did not transform him from an authorized to an unauthorized physician, especially in light of the policies underlying the Act. Thus, Marling was not required to prove that his case met one of the exceptions contained in Indiana Code § 22–3–3–4(d).

Marling, on the other hand, argues that his case is governed by Indiana Code § 22–3–3–4(c) because the Board was entitled to order medical care necessary to limit or reduce the amount and extent of his impairment. In his brief, Marling quotes Indiana Code § 22–3–3–4(c) and states that Dr. Tiwari's PPI rating of 19%, issued on August 28, 2005, was adjudicated "by agreement or award" when the single hearing member issued the award on August 9, 2007. Marling then concludes that "[u]nder the plain language of I.C. 22–3–3–

---

**3.** Other states are divided as to whether employers or employees should choose the injured employee's medical care providers. Employer advocates argue that employer choice is preferred in part because employers can direct injured workers away from providers who would prescribe excessive services and treatments. Worker advocates argue that workers should be treated by providers they trust. *See* David Neumark, Peter S. Barth & Richard A. Victor, *The Impact of Provider Choice on Workers' Compensation Costs and Outcomes,* 61 Indus. & Lab. Rel. Rev. 121, 121–22 (2007).

4(c), any treatment after August 28, 2005 may be provided by the employer or may be ordered by the [Board] as the Board 'may deem necessary to limit or reduce the amount and extent of the employee's impairment.'" Appellee's Br. p. 6 (quoting I.C. § 22–3–3–4(c)).

■ However, the plain language of Indiana Code § 22–3–3–4(c) states that the Board may order such treatment *"[a]fter an employee's injury has been adjudicated by agreement or award on the basis of permanent partial impairment ...."* (Emphasis added.) Marling correctly states that the injury was not adjudicated by agreement or award until the single hearing member issued the award on August 9, 2007. As a result, this section does not apply to the treatments at issue, which were provided by Dr. Tiwari between August 28, 2005, and August 9, 2007. Thus, Marling's reliance on *Krause v. Indiana University–Purdue University at Indianapolis,* 866 N.E.2d 846 (Ind.Ct.App.2007), *trans. denied,* is inapposite because, in that case, the employee refused treatment with the employer-provided physician, bringing Indiana Code § 22–3–3–4(c) into play.[4] Additionally, in that case, the employee sought an award of future medical care after the injury was adjudicated, also bringing Indiana Code § 22–3–3–4(c) into play.[5] *Krause,* 866 N.E.2d at 850. But at the time of Dr. Tiwari's treatments from August 28, 2005, to August 9, 2007, there had been no adjudication by award or agreement or refusal of medical treatment

such that Indiana Code § 22–3–3–4(c) would govern.

Because the treatments at issue were provided before the injury was adjudicated, this case is governed by Indiana Code § 22–3–3–4(a). This section requires that the employer shall furnish to the employee an attending physician and such surgical, hospital, and nursing services and supplies as the attending physician or worker's compensation board may deem necessary. Thus, to support an award for the treatments provided by Dr. Tiwari, either Dr. Tiwari, the attending physician provided by the employer, or the Board was required to find that the treatments were necessary.

■ Interpreting Indiana Code § 22–3–3–4(a), our Court has found that the fact that a doctor expected a treatment to ameliorate an employee's pain is substantial evidence upon which the Board could base its conclusion that a treatment was necessary. *Montgomery Aviation, Inc. v. Hampton,* 650 N.E.2d 77, 79 (Ind.Ct.App. 1995). The test does not require that the treatment successfully ameliorate or cure a condition. *See Daugherty,* 802 N.E.2d at 918 (adopting the test for unauthorized treatment in part as whether the treatment was "medically reasonable and necessary").

■ We conclude that the record contains sufficient evidence for the Board to have reasonably concluded that the pain treatments were necessary within the meaning of the statute. At the hearing,

---

4. The Court of Appeals is divided as to whether the "[a]fter an employee's injury has been adjudicated by agreement or award" time limitation applies to the refusal of services clause contained within Indiana Code § 22–3–3–4(c). *Cavazos v. Midwest Gen. Metals Corp.,* 783 N.E.2d 1233, 1241 (Ind.Ct.App. 2003) (finding that the time limitation does apply); *cf. Houchins v. Kittle's Home Fur-*

*nishings,* 589 N.E.2d 1190, 1193 (Ind.Ct.App. 1992) (finding that the time limitation does not apply).

5. We note that the portion of the Board's award to Marling granting ongoing medical treatment, which is unchallenged by BYL, is authorized by this section.

Marling testified that he suffered from back pain and spasms. Tr. p. 17. Marling testified that he had continued to see Dr. Tiwari for care, and that Dr. Tiwari would examine him to determine if Marling required other treatments, which included epidurals, nerve blocks, and radiofrequency ablations. *Id.* at 22. In a document labeled "Initial Consultation," Dr. Tiwari reported that Marling suffered from disc herniation, nerve root impingement, disc bulge, and disc protrusion. *Id.* at 216. Upon examination he also found that Marling's

> pain is more axial than radicular. The pain seems to be multi-modality.... The patient has not had a satisfactory resolution of his condition.... We recommended diagnostic and therapeutic lumbar facet block or medial branch block and use radiofrequency ablation for longer time relief. He will follow up for any residual radicular symptoms that may remain.... We will get him approved for the diagnostic and therapeutic injections and have him come back as soon as possible.

*Id.* at 217. After Dr. Tiwari found Marling to be at MMI and assigned a 19% PPI rating, he reported that a physical examination revealed that the radiofrequency ablations did seem to be helping. *Id.* at 227. Dr. Tiwari then prescribed new medications along with physical therapy to try to further reduce Marling's pain. *Id.* At another visit, Marling reported that the ablations were wearing off, and Dr. Tiwari prescribed an epidural injection to relieve the pain. *Id.* at 229. At yet another visit, Marling complained that physical therapy and medications were not helping, and Dr. Tiwari prescribed a diagnostic thoracic facet block. *Id.* at 234. After conducting a physical capacities evaluation, Dr. Tiwari opined on May 23, 2006, that although Marling had reached MMI, he would still require interventional pain management

and would benefit from a pain management program. *Id.* at 238. But in October 2006, Dr. Tiwari retracted his finding that Marling had reached MMI, clarifying that Marling would require medical intervention on an ongoing basis. *Id.* at 248. Thus, the record is replete with evidence that Dr. Tiwari had deemed the treatments he prescribed necessary to help ameliorate Marling's pain.

In its decision, the Board found that Dr. Tiwari opined that Marling's intractable pain would continue and that he would have periodic exacerbations. Appellant's App. p. 9 (Finding 6). The Board also found that Dr. Tiwari noted that Marling was able to complete daily life activities only with substantial modifications. *Id.* (Finding 7). The Board found that Marling credibly testified that he continues to suffer from chronic pain, requiring him to take daily pain medication. *Id.* at 10 (Finding 12). Additionally, the Board found that Dr. Tiwari concluded after conducting a physical capacities evaluation that Marling could not return to work and would require continued pain medication. *Id.* (Finding 14). These findings are sufficient to support the Board's decision that the pain management treatments with Dr. Tiwari from August 28, 2005, to August 9, 2007, were necessary. *See Krause,* 866 N.E.2d at 854 (finding that the Board's determination that the employer was obligated to provide further medical care entailed an implicit finding that the treatment was necessary to limit or reduce the amount and extent of her impairment). As a result, the Board's decision requiring BYL to pay for the medical treatments was proper.

Affirmed.

RILEY, J., and DARDEN, J., concur.