GRADEX, INC., Appellant–Defendant,

v.

Patrick ARBUCKLE, Appellee–Plaintiff.

No. 93A02–0811–EX–1043.

Court of Appeals of Indiana.

March 5, 2009.

Publication Ordered March 31, 2009.

Cameron L. Christoph, David A. Mack, Kopka, Pinkus, Dolin & Eads, Crown Point, IN, Attorneys for Appellant.

Daniel J. Harrigan, Bayliff, Harrigan, Cord, Maugans & Cox, Kokomo, IN, Attorney for Appellee.

## MEMORANDUM DECISION

BAKER, Chief Judge.

Appellant-defendant Gradex, Inc. (Gradex), appeals the order entered by the Full Worker's Compensation Board (the Board) in which the Board ordered Gradex to pay over 95% of appellee-plaintiff Patrick Arbuckle's medical expenses and permanent impairment compensation. Gradex argues that the Board erroneously concluded that (1) Arbuckle's employer, M & W Septic and Excavating ("M & W"), was a subcontractor of Gradex pursuant to Indiana Code section 22–3–2–14(c); and (2) M & W was financially unable to pay the worker's compensation award, so Gradex was required to foot the lion's share of the bill. Finding no error, we affirm.

### FACTS

Mark Wheeler and his wife, Janis Wheeler, own M & W, which had been in business for twenty-four years at the time of the incident herein. M & W was in the business of cleaning septic tanks and sewer lines. Mark and Janis ran the business out of their home and had only one employee, Arbuckle. M & W did not carry worker's compensation insurance for Arbuckle.

During the relevant period of time, Gradex was the prime contractor on an Indiana Department of Transportation project to rebuild a street in Kokomo. A Gradex employee mistakenly tore through a water line, causing sewage to back up into the basements of three or four homes that were serviced by that line. As a result, on April 20, 2006, Gradex called M & W to clean the sewer line. Gradex did not verify whether M & W carried worker's compensation insurance, and Gradex and M & W neither executed a written contract nor agreed upon a price for M & W's services ahead of time. Gradex had hired M & W in the past, as a need for M & W's services arose on particular projects.

Mark and Arbuckle arrived at the work-

site and ran a jet rodder[1] on the sewage line in an effort to determine how the affected homes were hooked up to the line. After pumping sewage out of one of the homes, Mark left to empty the truck. Arbuckle remained, continuing to use the jet rodder. He went to investigate the source of a strange noise he had heard and, while in close proximity to the uncovered sewer line, a stream of highly pressurized water and sewage debris broke through an opening and injured his hand. Arbuckle ended up having five different surgeries to repair the injury to his hand, incurring over $70,000 of medical bills in the process. He also missed eight weeks of work, but M & W has continued to pay his salary. Arbuckle's physician from the Indiana Hand Center testified that he has a 26% permanent partial impairment affecting his left hand and arm below the elbow.

On January 29, 2007, Arbuckle filed his application for adjustment of claim against M & W and Gradex, seeking compensation for the injuries to his hand. The case was tried on January 22, 2008, to a Single Hearing Member, and on February 18, 2008, he issued an order finding, in relevant part, as follows:

4. [Gradex] had contracted with M & W for the performance of a job ... in Kokomo, Indiana. [Arbuckle] sustained the accidental injury during the performance of that job.

\* \* \*

8. As of the date of hearing, neither [M & W] nor [Gradex] has provided medical benefits or compensation pursuant to the Worker's Compensation Act.

9. It appears that [M & W], however, has paid ongoing wages to [Arbuckle] during periods that he may have been partially or totally disabled and during periods of time that [Arbuckle] was undergoing medical treatment.

10. The evidence is that [Arbuckle] therefore did not suffer a wage loss as the result of his accidental injuries. . . .

11. Although [M & W] did not have a policy of worker's compensation in place as of the date of [Arbuckle's] accidental injury, [M & W] advises that it is now in compliance with the Worker's Compensation Act. It appears that [M & W] continued to pay [Arbuckle's] wages after the occurrence of the accidental injury and continues to employ [Arbuckle].

12. [M & W], a small family-owned business, is commended for retaining [an] attorney ... in this matter, for participating in the preparation of this matter for hearing and for purchasing worker's compensation insurance.

13. Although [Gradex] did not avail itself of the opportunity to exact a certificate of insurance from [M & W], [Gradex] is commended for retaining [an] attorney ... in this matter and for participating in the preparation of this matter for hearing.

14. Because [Gradex] failed to exact proof of insurance with respect to [M & W], both Defendants in this matter have been and remain liable to [Arbuckle] pursuant to Ind.Code § 23–3–2–14.

15. It is found by a preponderance of the evidence that [M & W] does not

1. A jet rodder is a type of water jet that uses high pressure water to clear obstructions in sewage lines. Appellant's Br. p. 4.

have the financial ability to pay the entire award in this case.

16. When asked, [M & W] does not provide to the Board a specific amount or estimated amount of the compensation that it believes it can afford to pay [Arbuckle]. [M & W's] responses to questions posed by counsel for [Gradex] suggest that [M & W] has not taken steps to estimate its ability to pay the award in this case, either in a lump sum or in installments.

17. It is found that [Gradex] has the financial ability to pay the entire award in this case.

### AWARD AND ORDER

1. ... The award of medical benefits in this matter shall include the sum [of] $73,526.57, to be paid directly to [Arbuckle's] medical providers, with deduction of the 10% attorney's fee payable directly to [Arbuckle's] counsel.

* * *

3. It is found that Dr. Idler's PPI rating is accurate. [Arbuckle] is entitled to compensation for the 25% permanent partial impairment affecting his left upper extremity below the elbow. [Arbuckle] is therefore awarded compensation for 10.4 degrees of permanent impairment for a total of [$13,600].

4. Based on [M & W's] representations that it has not procured worker's compensation insurance and that it continues to employ [Arbuckle], [M & W] shall pay to [Arbuckle] ... the sum of [$1,500]....

5. IT IS FURTHER ORDERED that [Gradex] shall have liability for the entire award of medical benefits and compensation for impairment herein, with credit to [Gradex] for the por-

tion of the award payable to [Arbuckle] by [M & W].

Appellant's App. p. 7–9. On March 14, 2008, Gradex filed an application for a review of the order by the Board, and after hearing argument, the Board entered an order on July 25, 2008, summarily affirming the Single Hearing Member's order. Gradex now appeals.

### DISCUSSION AND DECISION

#### I. Standard of Review

When we review a decision of the Board, we are bound by its factual determinations and will disturb those determinations only when the evidence is undisputed and leads inescapably to a contrary conclusion. *Krause v. Ind. Univ–Purdue Univ. at Indianapolis,* 866 N.E.2d 846, 851 (Ind.Ct.App.2007), *trans. denied.* In our review, we will neither reweigh the evidence nor assess witness credibility, and must examine only that evidence and the reasonable inferences therefrom that support the Board's findings. *Id.; Four Star Fabricators, Inc. v. Barrett,* 638 N.E.2d 792, 792 (Ind.Ct.App.1994). As to the Board's interpretation of the law, we apply a deferential standard of review to the interpretation of a statute by an administrative agency charged with its enforcement in light of its expertise in a given area. *Young v. Marling,* 900 N.E.2d 30, 34 (Ind.Ct.App.2009). Thus, we will reverse only if the Board incorrectly interpreted the Worker's Compensation Act (the Act). *Id.*

#### II. Subcontractor Status

The Board found that M & W was a subcontractor of Gradex pursuant to Indiana Code section 22–3–2–14, which provides as follows:

(c) Any contractor who shall sublet any contract for the performance of any work, to a subcontractor subject to the

compensation provisions of IC 22–3–2 through IC 22–3–6, without obtaining a certificate from the worker's compensation board showing that such subcontractor has complied with section 5 of this chapter, IC 22–3–5–1, and IC 22–3–5–2, shall be liable to the same extent as such subcontractor for the payment of compensation, physician's fees, hospital fees, nurse's charges, and burial expenses on account of the injury or death of any employee of such subcontractor due to an accident arising out of and in the course of the performance of the work covered by such subcontract.

The term "subcontractor" is not defined by the statute.

In support of its contention that the Board erred by finding M & W to be a subcontractor, Gradex directs our attention to *Alberici Constructors, Inc. v. Ohio Farmers Ins. Co.*, 866 N.E.2d 740 (Ind. 2007). In *Alberici*, our Supreme Court pondered the meaning of "subcontractor" within the context of a different statute that also fails to define the term. Having examined various other statutes, the purpose of the statute at issue, caselaw, and public policy, the court concluded that "a 'subcontractor' is any person or organization entering into a contract with a contractor to furnish labor and materials used in the actual construction of a state highway project. A pure material supplier or laborer is not a subcontractor." *Id.* at 746–47.

Assuming for argument's sake, without deciding, that the *Alberici* definition of "subcontractor" applies to the Act, we find that the evidence in the record supports a conclusion that M & W was neither a pure laborer—as Gradex argues—nor a pure material supplier. M & W supplied the labor services of Arbuckle and Mark and

the company's equipment, including a jet rodder, pumper truck, and various peripheral tools and appliances. Furthermore, we do not find the facts that Gradex and M & W did not have a written contract and had not agreed upon a price ahead of time to bar a conclusion that M & W was a subcontractor. Therefore, we find that the Board did not err by concluding that M & W was a subcontractor of Gradex for the purpose of Indiana Code section 22–3–2–14(c).[2]

### *III. Proportion of Liability*

■ Gradex also argues that the Board erred by ordering Gradex to pay the vast majority of the award. Indiana Code section 22–3–2–14(e) provides that the Board

> shall fix the order in which said parties shall be exhausted, beginning with the immediate employer, and, in an award under subsection (c), shall determine whether the subcontractor has the financial ability to pay the compensation and medical expenses when due and, if not, shall order the contractor to pay the compensation and medical expenses.

Gradex argues that the evidence in the record does not support the Board's conclusion that M & W does not have the financial ability to pay the award.

The evidence most favorable to the Board's conclusion is that Mark and Janis own M & W, which is a seasonal business, has only one employee, and operates out of their home. In 2005, M & W's adjusted gross income was $17,700; in 2006, it was $21,300. Janis, who was M & W's bookkeeper, acknowledged that M & W had a bank account holding $10,000, but testified that the money was being held in escrow to pay taxes owed to the government. Furthermore, she testified that the company's equipment was used and worth no

---

**2.** Inasmuch as we find that Gradex is liable pursuant to Indiana Code section 22–3–2– 14(c), we need not consider its arguments with respect to section 22–3–2–14(b).

more than what was owed on it to various creditors. Mark and Janis paid $95,000 for their home and still owed $80,239.38 on the mortgage at the time of the hearing. Janis stated that if she and Mark had refinanced their home to pay the award, they would not have been able to afford the increased mortgage payment. Janis testified that they do not have the money to pay the benefits. Given this evidence, we decline to disturb the Board's factual determination that M & W was unable to pay more than $1,500 of the award.

The judgment of the Board is affirmed.

NAJAM, J., and KIRSCH, concur.

### ORDER

Appellee Patrick Arbuckle, by counsel, has filed a Motion for Publication. In his Motion, Arbuckle asks this Court to publish the March 5, 2009 Memorandum Decision in this case, because Arbuckle contends that this Court's opinion clarifies a rule of law. *See* Indiana Appellate Rule 65(A)(1).

Having reviewed the matter, the Court FINDS AND ORDERS AS FOLLOWS:

1. Appellee's Motion for Publication is GRANTED. This Court's opinion handed down in this cause on March 5, 2009, marked Memorandum Decision, Not for Publication, is now ORDERED PUBLISHED.

BAKER, C.J., NAJAM, KIRSCH, JJ., concur.